FILED
FEB 1 0 2006
U.S. COURT OF
FEDERAL CLAIMS

**ORIGINAL**

ECF

**IN THE UNITED STATES
COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| REGINALD A. KRASNEY, MARION SACHUK, CAROLYN HRUSOVSKY, STACY MARKOWITZ, and CATERING BY DESIGN, INC., a Pennsylvania Corporation, on behalf of themselves and all other similarly situated taxpayers; Plaintiffs, vs. THE UNITED STATES OF AMERICA, THE INTERNAL REVENUE SERVICE, and MARK E. EVERSON, in his official capacity as Commissioner of the Internal Revenue Service; Defendants. | Case No.: 06-105 T<br><br>**COMPLAINT -- CLASS ACTION** |

Reginald A. Krasney, Marion Sachuk, Carolyn Hrusovsky, Stacy Markowitz, and Catering By Design, Inc. ("Plaintiffs"), on behalf of themselves and all similarly situated taxpayers, seek a *writ of mandamus* pursuant to 28 U.S.C. § 1361 and related declaratory and injunctive relief against the Defendant Internal Revenue Service ("I.R.S.") in connection with its improper administration of the Communications Excise Tax, 26 U.S.C. § 4251, *et. seq.* ("Communications Excise Tax"). Plaintiffs also seek for themselves and on behalf of all similarly situated taxpayers a refund of amounts improperly collected by the I.R.S. The grounds upon which this relief is sought are as follows:

## INTRODUCTORY STATEMENT

1. In December 2005, the United States Court of Appeals for the D.C. Circuit joined the virtually unanimous body of federal courts including two other federal circuit courts of appeal that have ruled that an estimated $9 billion in telecommunications excise taxes have been wrongly collected by the I.R.S. under § 4251 of the Internal Revenue Code.

2. Rather than meet what fundamentally is a problem of its own creation head-on and within the boundaries of applicable administrative agency and constitutional law, the I.R.S. has improperly shifted the problem to taxpayers, telecommunication service providers, and the federal courts by opposing refunds through piecemeal litigation throughout the country and by continuing to collect the Communications Excise Tax despite clear judicial pronouncements establishing the illegality of the tax.

3. The actions of the I.R.S. have been and continue to be arbitrary and capricious, contrary to law, and without a good faith basis. First, the I.R.S. has opposed and continues to oppose requests for refunds by urging an interpretation of section 4251 that contradicts the plain language of the statute itself and extends tax liability to communications services other than those envisioned by Congress. The I.R.S. has rigidly adhered to this interpretation in the face of concerted opposition from large corporate taxpayers, members of Congress, and even the telecommunications providers instructed to collect the tax from their customers.

4. Second, the I.R.S. has adhered to its faulty interpretation in the face of at least ten adverse federal court decisions to date (including three decisions by federal circuit courts of appeal) uniformly rejecting that interpretation. In fact, the I.R.S. has openly defied the federal courts, announcing publicly in its Notice 2005-79 (attached hereto as Exhibit 1), released on October 20, 2005 and published on November 14, 2005, that it will not abide by the rulings of

the federal courts (even in the Circuits in which the rulings were made) and directing that the Communications Excise Tax continue to be collected.

5. Third, the I.R.S. has taken the extraordinary measure of unilaterally suspending the administrative process by which Communications Excise Tax refund applications are determined by the I.R.S. The effect of this suspension has been:

- to deprive taxpayers of a meaningful administrative process for seeking refunds;
- to ensure that the straightforward interpretive question uniformly applicable to all consumers of telecommunications services is never universally resolved, but rather is repetitively litigated on a piecemeal basis in the federal courts;
- to increase the likelihood that taxpayers will be denied a refund for the full period to which they are entitled by operation of the applicable limitations period;
- to deny due process and ultimately a refund where a refund claim is smaller than the cost to pursue it, where pursuing a refund is otherwise viewed as prohibitively expensive or unduly burdensome, or where the prospect of litigation against the I.R.S. in the federal court system is unduly intimidating or carries with it the perceived threat of reprisal.

6. The I.R.S. is bound by and therefore cannot ignore the uniform adverse rulings of Article III federal courts that have established the illegality of the Communications Excise Tax. The I.R.S. cannot unilaterally suspend the administrative refund process. The I.R.S. cannot effectively enact new tax laws, nor can it promulgate new administrative rules without complying with mandatory procedural requirements. And the I.R.S. should not be permitted to shift the burden of resolving the Communications Excise Tax problem by simply continuing to collect the improper tax, by declining to address refund applications through administrative

channels, and by requiring instead that the right to a refund be re-litigated over and over again in the federal courts.

7. Finally, the improper actions of the I.R.S. described above have caused certain telecommunications service providers – which are caught in an untenable position between federal court decisions striking the tax, on the one hand, and the I.R.S. directing that the tax nonetheless be collected, on the other hand – to implement an "opt-out" tax policy by which *the Communications Excise Tax is being collected from some telecommunications customers, but is not being collected from other customers using the same services.* The Communications Excise Tax cannot be treated as a discretionary payment to the I.R.S., and the disparate collection of this tax is improper and unconstitutional.

**THE PARTIES**

8. Reginald A. Krasney ("Krasney") is and had been a customer of Cingular and Nextel, and has paid the Communications Excise Tax to both of these telecommunication companies. Krasney has paid, and Cingular and Nextel have collected, the Communications Excise Tax as part of the normal billing process used by each of these telecommunication service providers. Krasney was unlawfully required to pay the Communications Excise Tax, and continues to be improperly subject to the excise tax. Prior to the filing of this Complaint, Krasney has filed with the I.R.S. a Form 8849 and Schedule 6, requesting a refund of the Communications Excise Tax on behalf of himself and all those similarly situated taxpayers whose refund claims are so small that the filing of an individual refund claim is not economically feasible. A copy of the refund claim that was mailed to the I.R.S. on February 9, 2006 is attached hereto as Exhibit 2 and is incorporated by reference herein.

9. Marion Sachuk ("Sachuk") is a customer of T-Mobile (and has recently been a customer of Qwest), and has paid the Communications Excise Tax to each of these telecommunication companies. Sachuk has paid, and T-Mobile and Qwest have collected, the Communications Excise Tax as part of the normal billing process used by each of these telecommunication service providers. Sachuk was unlawfully required to pay the Communications Excise Tax, and continues to be improperly subject to the excise tax. Prior to the filing of this Complaint, Sachuk has filed with the I.R.S. a Form 8849 and Schedule 6, requesting a refund of the Communications Excise Tax on behalf of herself and all those similarly situated taxpayers whose refund claims are so small that the filing of an individual refund claim is not economically feasible. A copy of the refund claim that was mailed to the I.R.S. on February 9, 2006 is attached hereto as Exhibit 3 and is incorporated by reference herein.

10. Carolyn Hrusovsky ("Hrusovsky") is a customer of T-Mobile and Verizon, and has paid the Communications Excise Tax to each of these telecommunication companies. Hrusovsky has paid, and T-Mobile and Verizon, have collected the Communications Excise Tax as part of the normal billing process used by each of these telecommunication service providers. Hrusovsky was unlawfully required to pay the Communications Excise Tax, and continues to be improperly subject to the excise tax. Prior to the filing of this Complaint, Hrusovsky has filed with the I.R.S. a Form 8849 and Schedule 6, requesting a refund of the Communications Excise Tax on behalf of herself and all those similarly situated taxpayers whose refund claims are so small that the filing of an individual refund claim is not economically feasible. A copy of the refund claim that was mailed to the I.R.S. on February 9, 2006 is attached hereto as Exhibit 4 and is incorporated by reference herein.

11. Stacy Markowitz ("Markowitz") is a customer of Verizon Wireless, and has paid and continues to pay the Communications Excise Tax to this telecommunication company. Markowitz has paid, and Verizon Wireless, has collected the Communications Excise Tax as part of the normal billing process used by Verizon Wireless. Markowitz was unlawfully required to pay the Communications Excise Tax, and continues to be improperly subject to the excise tax. Prior to the filing of this Complaint, Markowitz has filed with the I.R.S. a Form 8849 and Schedule 6, requesting a refund of the Communications Excise Tax on behalf of herself and all those similarly situated taxpayers whose refund claims are so small that the filing of an individual refund claim is not economically feasible. A copy of the refund claim that was mailed to the I.R.S. on February 9, 2006 is attached hereto as Exhibit 5 and is incorporated by reference herein.

12. Catering By Design, Inc. ("Catering By Design"), a Pennsylvania Corporation, was unlawfully required to pay the Communications Excise Tax, and continues to be improperly subject to this tax. Prior to the filing of this Complaint, Catering By Design has filed with the I.R.S. a Form 8849 and Schedule 6, requesting a refund of the Communications Excise Tax on behalf of itself and all those similarly situated taxpayers whose refund claims are so small that the filing of an individual refund claim is not economically feasible. A copy of the refund claim that was mailed to the I.R.S. on February 9, 2006 is attached hereto as Exhibit 6 and is incorporated by reference herein.

13. Class members are all other similarly situated taxpayers.

14. Defendant I.R.S. is a bureau of the Department of the Treasury organized to carry out the responsibilities of the secretary of the Treasury under § 7801 of the Internal Revenue Code, and is charged with the administration and enforcement of the federal tax laws.

15. Defendant Mark E. Everson is the Commissioner of the I.R.S. Section 7803 of the Internal Revenue Code provides for the appointment of a Commissioner of Internal Revenue to administer and supervise the execution and application of the internal revenue laws. (Collectively, unless otherwise stated, the I.R.S. and Defendant Everson are referred to herein as the "I.R.S.").

## JURISDICTION

16. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1346 and 1491.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS

**The Improper Tax.**

17. The Communications Excise Tax, enacted by the War Revenue Act of 1898 to fund the Spanish-American War, is a 3% tax applicable to "amounts paid for communications services," including, among others, toll telephone service. 26 U.S.C. § 4251(b)(1)(A)-(C). Toll telephone service is defined in the statute as "a telephonic quality communication for which [] there is a toll charge which varies in amount with the distance ***and*** elapsed transmission time of each individual communication." 26 U.S.C. § 4252(b)(1) (emphasis added). The Communications Excise Tax is collected in connection with calls made on cell phones, toll free numbers and long distance plans (certain categories of customers are exempt from the Communications Excise Tax, including certain international organizations, common carriers, nonprofit hospitals, state and local government entities, and nonprofit educational organizations). 26 U.S.C. § 4253.

18. The Communications Excise Tax is collected by the telecommunications service providers from their customers, and is then remitted to the I.R.S. pursuant to Treas. Reg. § 49.4251-2(c). Because the Communications Excise Tax is automatically added to monthly

charges and embedded in the billing statements, the tax presents virtually no administrative cost to the I.R.S. and is easily overlooked by telephone customers.

19. The Communications Excise Tax is proper only if, as the statute states, the telephone toll charge "varies in amount with the distance and the elapsed transmission time of each individual communication." Contrary to the statute, however, the tax has been applied by the I.R.S. to long distance telephone charges that are imposed at a "postalized" rate. A postalized fee structure is one in which the telephone customer is charged the same amount regardless of the distance between the caller and recipient of the call, and only depends upon the amount of elapsed transmission time. Telephonic communications that are billed at postalized rates do *not* vary with *both* distance and transmission time, and therefore clearly fall outside the statutory language creating the Communications Excise Tax. Having now been confronted with the misapplication of this tax provision, the I.R.S. has taken the untenable position that the word "***and***" in the statutory definition of "toll telephone service" really means "***or***."

**Rejection of the I.R.S.'s Interpretation by the Federal Courts.**

20. Not surprisingly, the I.R.S.'s interpretation of section 4252(b)(1) has been uniformly rejected by the federal courts. As of the filing of this Complaint, the Sixth Circuit (opinion attached at Exhibit 7), the Eleventh Circuit (opinion attached at Exhibit 8), and most recently the D.C. Circuit (opinion attached at Exhibit 9) all have determined that the Communications Excise Tax has been improperly interpreted and applied by the I.R.S.[1] Numerous decisions by the federal trial courts reach the same result.[2]

---

[1] *Nat'l Railroad Passenger Corp. v. U.S.*, 431 F.3d 374 (D.C. Cir. 2005); *OfficeMax, Inc. v. U.S.*, 428 F.3d 583 (6th Cir. 2005); *Am. Bankers Ins. Group v. U.S.*, 408 F.3d 1328 (11th Cir. 2005).

[2] *America Online, Inc. v. U.S.*, 64 Fed.Cl. 571 (Fed. Cl. 2005), *appeal docketed*, No. 05-5138 (Fed. Cir. Nov. 29, 2005); *Honeywell Int'l, Inc. v. U.S.*, 63 Fed. Cl. 188 (Fed. Cl. 2005); *Hewlett-Packard Co. v. U.S.*, Exhibit No. 10,

Continued…

21. The courts' rejection of the I.R.S.'s interpretation of section 4252(b)(1) has been both clear and emphatic. By way of illustration, the D.C. Circuit Court of Appeals wrote:

> In 1965, when Congress passed section 4252(b), [Message Toll Service] charges varied by both time and distance. Reading "and" conjunctively therefore makes the statute mirror the [Message Toll Service] system, precisely what Congress intended. To be sure, Congress does sometimes use the word "and" disjunctively. Indeed, it did so in this very statute: No one would contend that a service must satisfy both subsection (b)(1) and subsection (b)(2) to constitute "toll telephone service," as a conjunctive reading of the "and" separating the two sections would require. Because the two subsections describe separate types of services, not criteria for a single service, ***such a reading would be absurd.*** In contrast, reading the "and" that separates "distance" from "elapsed transmission time" conjunctively produces just the result Congress intended, i.e., a tax on [Message Toll] service.
>
> * * * *
>
> We have considered the government's remaining arguments and found them to lack merit. Because the district court's well-reasoned opinion properly ascertains the statute's meaning, we affirm the grant of summary judgment to Amtrak. True, this interpretation limits the effectiveness of the tax on long-distance calls, but because ***section 4252(b)(1) is unambiguous***, the IRS must take its case to Congress, not this court. [emphasis added; internal citation omitted].

*Nat'l Railroad Passenger Corp. v. U.S.*, 431 F.3d 374, 376 and 379 (D.C. Cir. 2005).

**Objections to and Disparate Collection of the Improper Excise Tax by Communications Services Providers.**

22. Consistent with the uniform decisions by the federal courts, members of Congress and telecommunication service providers both have voiced their objection to the I.R.S.'s bizarre interpretation of section 4252(b)(1).

---

....Continued
2005 WL 1865419 (Aug. 5, 2005), *appeal docketed*, No. 06-15052 (9th Cir. Jan. 20, 2006) ; *Reese Bros. v. U.S.*, Exhibit No. 11, 2004 WL 2901579 (W.D.Pa. Nov. 30, 2004), *appeal docketed*, No. 05-2135 (3d Cir. Apr. 18, 2005); *Fortis, Inc. v. U.S.*, Exhibit No. 12, 2005 WL 356827 (S.D.N.Y. Feb. 14, 2005), *appeal docketed*, No. 05-2518 (2d Cir. Sep. 13, 2005).

23. By way of example, on June 29, 2005, twenty (20) members of Congress sent a joint letter to Treasury Secretary John Snow (copied to defendant Everson) urging the federal government to acknowledge that the Communications Excise Tax does not apply to postalized communications services, and to discontinue the improper collection of this tax. A true and correct copy of this letter is attached as Exhibit 13, and is incorporated by reference herein.

24. This letter states, in pertinent part:

> The outdated statutory provision at issue defines toll telephone service as a communication for which the rate varies by both the elapsed transmission time and the distance of each individual call. The courts have all noted, and the I.R.S. does not dispute, that this definition was intended to describe a long distance service sold by AT&T in 1965, for which the rate varied based on mileage bands. Today, there are virtually no long-distance services for which the rate varies depending on the distance of the calls. Incredibly, we think, the I.R.S. has maintained that the word "and" should be read to mean "or." Fortunately for the taxpayers, the courts have now uniformly rejected that position.
>
> * * * *
>
> We urge you to order the I.R.S. staff to follow the uniform interpretation of the courts and thereby provide relief for the millions of consumers who are paying FET on services that are not statutorily subject to the tax. Your action in this regard would also underscore the fact that this tax is hopelessly out-of-date and technically flawed. . . . [emphasis added].

25. As stated in the letter, the telecommunication service providers have been placed in "an untenable position": They are, on the one hand, required by the Treasury Regulations to collect the Communications Excise Tax and remit the tax to the I.R.S. On the other hand, the telecommunication service providers have recognized the importance of the federal court decisions rejecting the I.R.S.'s interpretation of the statute. Accordingly, "[i]f [telecommunication providers] abide by the decisions of the court, they will risk liability to the I.R.S. on audit. If they continue to bill [the excise tax] as instructed by the IRS, they risk the possibility of having to defend lawsuits, including class actions, brought against them by their customers."

26. Upon information and belief, some of the telecommunication service providers have adopted a policy pursuant to which they will refrain from collecting the tax from those customers who affirmatively contact the providers and indicate that they no longer wish to pay the tax.

27. By way of example, AT&T has adopted the policy of permanently eliminating the Communications Excise Tax on a prospective basis from a customer's monthly bills when requested to do so by the customer in writing. Kerry Hibbs, a national AT&T spokesman, recently stated that "we will exempt customers who do not want to pay the federal excise tax." (Exhibit 14). Indeed, AT&T has created a special "opt-out" form whereby customers can direct AT&T to refrain from charging the Communications Excise Tax based on a "religious objection," because it is a "war tax," or due to "other" reasons. A true and correct copy of this form is marked as Exhibit 15 and is incorporated by reference herein.

28. Although AT&T represents that it notifies the Regional Director of the I.R.S. of the names of those customers that have elected not to pay the Communications Excise Tax, upon information and belief, AT&T in fact does not collect the tax from customers that submit one of its opt-out forms.

29. Upon information and belief, AT&T has not notified all of its customers of this "opt-out" opportunity, meaning that, presumably, some customers – especially less sophisticated customers or those that otherwise have not tracked the issue closely – simply are unaware of this option.

30. The consequences of this policy are extraordinary: in short, the Communications Excise Tax has been transformed into a discretionary payment being collected from some telephonic communications customers, but not being collected from other customers using the

same services. Because it is not being uniformly imposed, the Communications Excise Tax no longer is a legitimate, uniform tax.

31. Upon information and belief, though aware of the opt-out policy devised and implemented by telecommunications providers, the I.R.S. has not taken any action to deter this policy or otherwise collect the Communications Excise Tax from taxpayers who have opted out of paying the tax. Accordingly, customers that continue to pay the Communications Excise Tax have been and continue to be subject to discriminatory, differential collection in violation of the Equal Protection Clause of the United States Constitution.

**I.R.S. Notice 2005-79.**

32. Undeterred by taxpayers, members of Congress, telecommunication service providers, and even the federal courts, the I.R.S. has issued its Notice 2005-79, which essentially advises that:

- The I.R.S. will adhere to its interpretation and application of section 4251;
- The I.R.S. will continue to litigate the application of section 4251 in the courts notwithstanding the mounting adverse rulings;
- The I.R.S. has directed that service providers continue to collect the Communications Excise Tax in accordance with the I.R.S.'s interpretation of section 4251; and
- The I.R.S. essentially has suspended the administrative refund process, insofar as refund applications "will not be processed while there are pending cases in other [unspecified] United States Courts of Appeals." There are currently pending I.R.S. appeals on this subject in the Second, Third, Ninth, and Federal Circuit Courts of Appeal.

33. Upon information and belief, the I.R.S. has not retracted this Notice. On the contrary, it has acted and continues to act in conformity with the Notice. Specifically, the I.R.S. has not re-instated the administrative refund process, it continues to adhere to its improper

interpretation of section 4251, and it continues to oppose refund requests through litigation in the federal courts.

**The I.R.S.'s Positions Are Not Taken In Good Faith.**

34. The I.R.S.'s administration of the Communications Excise Tax in a manner contrary to the plain meaning of the statute is arbitrary and capricious, contrary to law, and done in the absence of good faith.

35. The I.R.S.'s continued interpretation and collection of the Communications Excise Tax in a manner contrary to the rulings of Article III federal courts is arbitrary and capricious, contrary to law, and done in the absence of good faith.

36. The I.R.S.'s express and intentional disregard for the rulings of Article III federal courts is arbitrary and capricious, contrary to law, and lacking good faith. Moreover, it constitutes a policy of non-acquiescence on the part of the I.R.S. that is repugnant to the separation of powers envisioned by, *inter alia*, the United States Constitution.

37. Upon information and belief, the I.R.S.'s policy of collecting the Communications Excise Tax despite the decisions of the federal courts, while requiring that refund claims be pursued through litigation on an individual basis, is calculated to delay or avoid resolution of a significant refund problem by making the refund procedure unfairly adversarial and intimidating, uneconomical, and otherwise economically burdensome. By way of illustration, in a recent article U.S. Senator Charles Schumer is reported to have estimated that the average refund amount to which cell-phone customers in New York would be entitled for the past three years combined is approximately $54.00 per phone. A true and correct copy of this article is attached hereto as Exhibit 16 and is incorporated by reference herein.

38. A phone customer seeking the average refund amount of $54.00 could do so only by undertaking an array of costly and time-consuming steps. Assuming that the taxpayer is even aware of his or her entitlement to a refund, the first step is for the taxpayer to collect data regarding his or her payment of the tax for at least the preceding three years. After collecting this data from invoices or other sources, if available, the taxpayer next must figure out the amount of the refund and the I.R.S. refund claims procedure (or hire a tax or legal consultant to advise them); *i.e.* which refund form(s) must be completed, how to properly fill out these forms, and where they are to be filed. Class members must do this with the advance knowledge that their refund claim effectively already has been denied (or, at a minimum, suspended indefinitely). If the taxpayer nonetheless wishes to pursue a refund, he or she must hire an attorney and incur the expense associated with litigating their claim in a federal trial court. Once the taxpayer has prevailed in the federal trial court, the taxpayer faces the prospect of an appeal (the I.R.S. has pursued appeals in at least five cases to date). Only after succeeding at the appellate level will the taxpayer finally receive (presumably) a refund, which at this point will be miniscule in comparison to the costs required to pursue such a costly and impractical course of action. The I.R.S.'s policy of imposing such an unfair and improper barrier to obtaining a refund is arbitrary and capricious, contrary to law, and without a good faith basis.

39. The I.R.S.'s suspension of the administrative process denies due process to class members. By suspending the administrative process and requiring that taxpayers litigate in the federal courts for a refund, the I.R.S. is shielding itself from refund obligations to class members that have been improperly subject to the tax, some of whom may have lost and may continue to lose refund rights by operation of the applicable limitations period. Under the circumstances of

this case, requiring class members to follow these costly and time consuming procedures amounts to an unconstitutional deprivation of property.

**The I.R.S.'s Actions Exceed The Limits Of Its Administrative Authority.**

40. The I.R.S.'s interpretation of section 4252(b)(1) extends tax liability to communications services to which Congress did not intend or direct the law to apply; thus, the I.R.S.'s interpretation, if accepted, creates a new law. Such legislation is improper, exceeds the limits of the I.R.S.'s authority, and is unconstitutional because it usurps the legislative powers reserved for Congress. Alternatively, the I.R.S.'s interpretation is tantamount to agency rule-making. This rule-making is improper, exceeds the limits of the I.R.S.'s authority, and is unconstitutional because the I.R.S. failed to observe the requisite notice, hearing and deliberative procedures.

41. The I.R.S.'s unilateral suspension of the administrative process is improper, exceeds the limits of the I.R.S.'s authority, and is unconstitutional.

42. The I.R.S. is bound by the decisions of the federal courts. The I.R.S.'s election to disregard those decisions as they relate to the impropriety of the Communications Excise Tax being applied to certain telecommunications services is improper and far exceeds the limits of the I.R.S.'s administrative powers. Indeed, the decision of the I.R.S., an executive agency, to ignore the uniform directive of Article III federal courts is a policy of non-acquiescence repugnant to the separation of powers and judicial review principles of the United States Constitution.

## CLASS ACTION ALLEGATIONS

43. Plaintiffs bring this action as a class action pursuant to Rules 23(a), 23(b)(1), and (b)(2) of the Rules of the United States Court of Federal Claims on behalf of each of the following two (2) classes:

> **The Prospective Relief Class.** All taxpayers who have been and continue to be improperly subjected to the Communications Excise Tax.
>
> **The Refund Class.** All taxpayers who have improperly paid the Communications Excise Tax, but excluding any taxpayer who has received a refund or has submitted a refund claim and chooses to pursue that refund on an individual basis (provided that the I.R.S. administrative procedures for obtaining refunds are properly re-implemented).

44. The members of each class are so numerous that joinder of all members is impracticable. While the exact number of members in each class is unknown to Plaintiffs at this time, telecommunication service providers have stated that the improper tax is being imposed on "millions of consumers." Additionally, the size of each class easily can be confirmed through discovery of business and tax records routinely maintained by the I.R.S. and the telephone companies that are required to collect the tax. The disposition of the class members' claims in a class action will provide a substantial benefit to the parties and this Court, as it will eliminate duplicative, repetitive and wasteful refund procedures and litigation, and is the only assurance that class members will actually receive a refund of the improperly collected tax.

45. There are questions of law and fact common to members of both classes. Questions of law and fact common to class members which predominate over questions that may affect individual taxpayers include:

a. Whether the I.R.S. is bound by the decisions of the Article III federal courts that have determined that the Communications Excise Tax has been improperly interpreted by the I.R.S.;

b. Whether the I.R.S. has violated the Fifth Amendment to the United States Constitution by its actions as alleged herein;

c. Whether the Communications Excise Tax is entitled to be treated as a legitimate tax given:

(i) the uniform rulings adverse to the I.R.S. declaring its imposition to be inconsistent with and unsupported by its statutory language and, thus, improper, and

(ii) the fact that its collection from has become discretionary inasmuch as Communication Service Providers have given taxpayers an opportunity to opt out of payment of the Communications Excise Tax;

d. Whether the I.R.S. has acted in complete disregard of the Tax Code;

e. Whether Plaintiffs and members of the Prospective Relief Class have a clear right to relief;

f. Whether the I.R.S. has a clear duty to act with respect to Plaintiffs and the Prospective Relief Class;

g. Whether there is no other adequate remedy available to Plaintiffs and the Prospective Relief Class;

h. Whether the I.R.S. should be enjoined from imposing or collecting the Communications Excise Tax;

i. Whether the I.R.S. should be required to refund to Plaintiffs and members of both Classes all previously improperly collected Communications Excise Taxes, and to facilitate such refunds at no cost to Class members; and

j. Whether the Prospective Relief Class is entitled to injunctive and declaratory relief against the I.R.S.

46. The I.R.S. has acted on grounds uniformly applicable to the both Classes, thereby making final relief with respect to each class as a whole appropriate in this case.

47. Plaintiffs' claims are typical of the claims of members of both Classes, as all members of each class are similarly affected by Defendants' wrongful conduct. All class members of both classes were – and continue to be – improperly subject to the Excise Tax, and the costs of pursuing an individual claim for a refund make it economically infeasible for members of the Refund Class to pursue.

48. Plaintiffs will fairly and adequately protect the interests of Class members in both Classes as Plaintiffs have retained competent counsel who are experienced in federal agency litigation, federal tax law, and national class action practice.

49. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. In fact, a class action provides for the *only* practical, fair, and due process method for the resolution of this dispute. As a class action is the only practical, fair, and due process method for members of both classes to obtain relief under these circumstances, it provides a superior method for the resolution of these claims.

50. There will be no difficulty in the management of this action as a class action. There are several practical and feasible methods for granting the requested relief of the Refund Class. Awarding cash refunds to Refund Class members will not be unduly burdensome, as the identity and addresses of Class members are maintained by the I.R.S. and the telephone companies that are required to collect the tax. Alternatively, this Court could provide members of the Refund Class with refunds by ordering the I.R.S. to credit taxes improperly collected onto

the future phone bills and/or income taxes of Class members. Similarly, this Court will face no difficulty in granting the requested relief of the Prospective Relief Class.

**FIRST CLAIM FOR RELIEF**
**WRIT OF MANDAMUS AGAINST THE I.R.S.**
**ON BEHALF OF THE PROSPECTIVE RELIEF CLASS**

51. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

52. Plaintiffs and all members of the Prospective Relief Class that have been improperly subject to the Communications Excise Tax have a clear right to relief. These taxpayers are collectively entitled to refunds of the excise tax improperly collected by the I.R.S., and also have a clear right to be free from the imposition of taxes that are not authorized by the statute and that have been consistently held to be inapplicable under the circumstances.

53. Plaintiffs and all members of the Prospective Relief Class additionally have a clear right to a meaningful administrative process whereby refund applications are promptly and meaningfully considered, and appropriate refunds promptly paid.

54. The I.R.S. has a clear duty to act. The I.R.S. is bound by the rulings of Article III federal courts, and has a duty to act in conformity with those rulings. The I.R.S. has a duty to properly administer the federal tax laws. The I.R.S. has a duty to refrain from abusing the tax laws or its administrative authority relative to the tax laws. The I.R.S. has breached these duties and thus has a clear duty to refund the improperly collected excise tax and to promptly re-instate an administrative process to meaningfully facilitate those refunds.

55. Plaintiffs and all members of the Prospective Relief Class lack an adequate alternative remedy. Individual refund suits would not provide class members with adequate relief under the circumstances of this case because:

- the administrative process has been suspended;
- the I.R.S.'s position has been predetermined (meaning that unless also directed to act in accordance with the opinions of the federal courts, reinstatement of the administrative process would be futile);
- individual suits in the federal courts are grossly inefficient and cost-prohibitive to most taxpayers;
- individual suits in the federal courts are wasteful and unnecessarily burdensome and expensive even to taxpayers that can afford them;
- millions of individual refund suits would be outrageously burdensome to the I.R.S. and to the federal court system, resulting in a tremendous waste of private, agency, and judicial resources.
- the I.R.S. has acted and continues to act in complete disregard of the Tax Code and the rulings of the federal courts, and requiring a taxpayer to file a refund claim that the I.R.S. is "certain to lose" is an inadequate remedy as a matter of law; and
- requiring individual suits for the requested relief under the circumstances here would be inequitable.

56. A writ of mandamus requiring the Commissioner of the I.R.S. to (a) comply with the decisions of the federal courts, in particular, their interpretation of relevant provisions of the Tax Code, (b) promptly reinstate the administrative refund process, (c) promptly process pending refund applications in accordance with that process, and (d) immediately develop and implement a Court-supervised program that will effect a refund to all persons who have paid the Communications Excise Tax, at no cost to such taxpayers and without the necessity of submission of a refund application is the only practical and efficient method by which taxpayers

can preserve their property and can defend themselves from the unreasonable position of the I.R.S.

57. A writ of mandamus is warranted under the extraordinary circumstances of this case.

**SECOND CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT AGAINST THE I.R.S. ON BEHALF OF THE PROSPECTIVE RELIEF CLASS**

58. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

59. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), generally empowers the federal courts to issue a declaratory judgment. While this power is expressly curtailed in instances where declaratory relief is sought in connection with federal taxes, the Anti-Injunction Act, 26 U.S.C. § 7421, and analogous provisions of the Declaratory Judgment Act are inapplicable where the I.R.S. acts in bad faith and without a legal basis. Moreover, an exception to the Anti-Injunction Act and analogous provisions of the Declaratory Judgment Act apply where it is clear that under no circumstances could the government ultimately prevail and equity jurisdiction otherwise exists.

60. The I.R.S.'s actions in this case have not been taken in good faith. The I.R.S.'s actions are contrary to the clear language of applicable provisions of the Tax Code. The I.R.S.'s actions are intentionally contrary to the rulings of the federal courts, and far exceed the limits of federal agency and constitutional law. Upon information and belief, the I.R.S.'s actions are being taken for an improper purpose; namely, to impose and collect an illegitimate tax and to delay and complicate lawful refund requests at the expense of taxpayers and the federal courts. The I.R.S.'s actions are without an independent basis in law, including the Tax Code.

61. The I.R.S. cannot prevail – indeed, it already has not prevailed -- in its interpretation of section 4252(b)(1). Additionally, the equities overwhelmingly favor the members of the Class.

62. The Prospective Relief Class is entitled to a declaratory judgment providing that the I.R.S. has improperly collected the Communications Excise Tax from Prospective Relief Class members. Further, the Prospective Relief Class is entitled to a declaratory judgment that the continued collection of this tax is improper because once this money is turned over to the I.R.S., taxpayers must file a refund which, under the circumstances of this case, does not provide Class members with an adequate remedy.

63. Thus, neither the Anti-Injunction Act nor the Declaratory Judgment Act prevents this Court from issuing a declaratory judgment under the unique circumstances present here.

**THIRD CLAIM FOR RELIEF**
**REFUNDS OF AMOUNTS IMPROPERLY AND ILLEGALLY COLLECTED BY THE I.R.S. ON BEHALF OF THE REFUND CLASS**

64. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

65. This Court has jurisdiction over Plaintiffs' claims, as Plaintiffs have filed a Claim for a Refund simultaneously with the filing of this Complaint. The I.R.S. has denied Plaintiffs' refund claims through its unambiguous pronouncement in Notice 2005-79. By declaring its intention to halt the processing of refund claims for the Communications Excise Tax, the I.R.S. has waived the waiting period of 26 U.S.C.A. § 6532(a)(1), and has given Plaintiffs the implicit authorization to immediately file this class action suit in federal court.

66. This Court also has jurisdiction to award refunds to all members of the Refund Class. Requiring members of the Refund Class with refund claims that may be less than the

costs associated with obtaining a refund to proceed on an individualized basis is an unconstitutional deprivation of property in violation of the Fifth Amendment to the United States Constitution.

67. A denial of due process has occurred and will continue to occur, absent this Court's intervention, in the following ways:

a. The I.R.S. continues to collect the Communications Excise Tax despite the uniform judicial rulings declaring the tax to be improper;

b. The I.R.S.'s collection of the tax is an unlawful taking of property of Class members;

c. The I.R.S.'s administrative program for seeking and obtaining a refund does not alter the conclusion that collection of the tax is an unlawful taking of property without due process of law because:

i. the I.R.S. has suspended indefinitely the processing of refund claims and, indeed, has forced taxpayers to litigate refund claims; and

ii. the I.R.S.'s administrative refund procedure is too costly to implement for some Class members; thus, even if the refund procedure were operational and timely administered it would effectively leave some Class members with no remedy to correct or recover their improperly taken property.

68. Alternatively, and at a minimum, this Court should require the I.R.S. to notify all members of the Refund Class that they are entitled to file for a refund (at the expense of the I.R.S.), and to provide these class members with a meaningful method by which to obtain refunds.

**FOURTH CLAIM FOR RELIEF**
**RECOVERY OF COSTS AND ATTORNEYS' FEES**
**AGAINST THE I.R.S.**
**ON BEHALF OF BOTH CLASSES**

69. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

70. If and to the extent that relief is granted on a class-wide basis, Plaintiffs request this Court to award the payment of reasonable Attorneys' fees.

71. Alternatively, the prevailing party may be entitled to the recovery of reasonable administrative and litigation costs (including attorney's fees) in litigation with the United States in connection with the determination, collection, or refund of any tax. 26 U.S.C. § 7430.

72. The position of the I.R.S. is not "substantially justified" for purposes of 26 U.S.C. § 7430(c)(4)(B). Moreover, the actions of the I.R.S. have been sufficiently egregious to warrant a premium fee recovery over the statutory rate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of all similarly situated taxpayers, pray for judgment against Defendants as follows:

(1) For a writ of mandamus on behalf of the Prospective Relief Class compelling the I.R.S., and Mark W. Everson, the Commissioner of the I.R.S. to:

(a) comply with the decisions of the federal courts, in particular, their interpretation of relevant provisions of the Tax Code;

(b) cease the collection of the Communications Excise Tax;

(c) reinstate the administrative refund process and promptly process refund applications in accordance with that process;

(d) promptly adopt and implement a refund procedure having the objective of repaying to members of the Class all amounts paid to the I.R.S. as a Communications Excise Tax, without cost to the taxpayer or the necessity of filing a refund application;

(2) For a judgment in the form of a declaration with respect to the Prospective Relief Class that:

(a) the I.R.S. is bound by the decisions of the federal courts, in particular, their interpretation of relevant provisions of the Tax Code;

(b) the I.R.S. has exceeded its authority by improperly collecting the Communications Excise Tax from Class members;

(c) the continued collection of the Communications Excise Tax from Class members is improper because the I.R.S.'s refund procedure is unfeasible for Class members;

(3) For an Order awarding members of the Refund Class with refunds for the amounts of past Communications Excise Taxes improperly collected by the I.R.S., along with statutory interest;

(4) For an order awarding attorneys' fees and all of the costs associated with this litigation to counsel for Plaintiffs and members of both Classes; and

(5) For an order awarding any such further relief that this Court deems just and proper.

Date: February 10, 2006

R. Montgomery Donaldson
**MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP**
300 Delaware Avenue, Suite 750
Wilmington, Delaware 19801
Telephone: (302) 504-7800
Fax: (302) 504-7820
E-mail: rdonaldson@mmwr.com

Stephen A. Madva
**MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP**
123 South Broad Street
Philadelphia, Pennsylvania 19109-1030
Telephone: (215) 772-1500
Fax: (215) 772-7620
E-mail: smadva@mmwr.com

Nicholas E. Chimicles, Esquire

**Attorneys for Plaintiffs:**

**CHIMICLES & TIKELLIS LLP**
Nicholas E. Chimicles
Benjamin F. Johns
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633
E-mail: nick@chimicles.com

Disclosure Statement Pursuant to RCFC Rule 7.1(a)

There is no parent corporation of, nor any publicly held corporation that owns 10% or more of the stock of, Catering By Design, Inc.