**H**

**Briefs and Other Related Documents**

United States Court of Appeals,
District of Columbia Circuit.
NATIONAL RAILROAD PASSENGER CORPORATION, Appellee
v.
UNITED STATES of America, Appellant.
**No. 04-5421.**

Argued Oct. 25, 2005.
Decided Dec. 9, 2005.

**Background:** Amtrak brought action against Internal Revenue Service (IRS), seeking communications excise tax refund. The United States District Court for the District of Columbia, Rosemary M. Collyer, J., 338 F.Supp.2d 22, granted summary judgment for Amtrak, and IRS appealed.

**Holding:** The Court of Appeals, Tatel, Circuit Judge, held that statute imposing federal communications excise tax on certain toll telephone services did not apply to per-minute long-distance telephone services.

Affirmed.

West Headnotes

**[1] Internal Revenue 🔑4349**
220k4349 Most Cited Cases
Statute imposing excise tax on telephone calls for which toll charge "varies in amount with distance and elapsed transmission time of each individual communication" does not cover long-distance telephone charges varying by time but not by distance. 26 U.S.C.A. §§ 4251, 4252(b)(1).

**[2] Internal Revenue 🔑4349**
220k4349 Most Cited Cases
Public carrier's per-minute long distance telephone charges did not vary by both time and distance, within meaning of statute imposing federal communications excise tax, even though it paid higher rate for calls from Canada than it did for domestic calls; rate difference was because of international border, not because of distance call traveled. 26 U.S.C.A. §§ 4251, 4252(b)(1).

*374 Appeal from the United States District Court for the District of Columbia (No. 03cv00431).

Teresa E. McLaughlin, U.S. Department of Justice, argued the cause for appellant. With her on the briefs were Eileen J. O'Connor, Assistant Attorney General, Kenneth L. Wainstein, U.S. Attorney, and Robert W. Metzler.

Jean A. Pawlow argued the cause for appellee. With her on the brief were Shane T. Hamilton and Dennis M. Moore.

Before: TATEL and GRIFFITH, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge.

[1] In this case, we must decide whether a statute imposing a tax on telephone calls for which the toll charge "varies in amount with the distance and elapsed transmission time of each individual communication" covers long-distance telephone charges varying by time but not by distance. The district court concluded that the statute does not cover such charges, and we agree.

**I.**

Section 4251 of the Internal Revenue Code imposes a tax on "toll telephone service," defined in section 4252(b) as

> (1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each *375 individual communication and (B) the charge is paid within the United States, and
> (2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

26 U.S.C. § 4252(b). Enacted in 1965, this language replaced an earlier definition of "toll telephone service": "a telephone or radio telephone message or conversation for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

which (1) there is a toll charge, and (2) the charge is paid within the United States." 26 U.S.C. § 4252(b) (1958); Excise Tax Reduction Act of 1965, Pub.L. No. 89-44, § 302, 79 Stat. 136, 146 (enacting current language). The 1965 Act phased the tax out over three years, § 302, 79 Stat. at 145, but later Congresses repeatedly extended the tax, finally making it permanent in 1990, Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101-508, § 11217, 104 Stat. 1388, 1388-437.

When Congress last amended section 4252(b) in 1965, only AT & T provided long-distance telephone service. At that time, AT & T offered two billing plans. The first, Message Toll Service (MTS), charged each individual call based on duration, distance traveled, and time of day. Under the second plan, Wide Area Telephone Service (WATS), customers purchased blocks of usage time for a flat fee. WATS customers paid either a flat monthly rate for an unlimited number of calls and minutes or a lower rate for up to fifteen hours of calling plus a further charge for each additional hour. Pointing to legislative history, the parties in this case agree that Congress designed subsection (b)(1) to cover MTS and subsection (b)(2) to cover WATS. *See* H.R.Rep. No. 89-433, at 30 (1965); S.Rep. No. 89-324, at 35 (1965). They also agree that, as Congress intended, section 4252(b) covered all long-distance services existing in 1965.

Taxing all 1965 long-distance service, however, is a far cry from taxing all long-distance service today. Not only does AT & T no longer hold a monopoly on long-distance service, but today's multitude of long-distance carriers offer far more rate structures. Most significantly for our purposes, many customers now pay per-minute charges that remain constant regardless of how far their calls travel. Appellee National Railroad Passenger Corporation ("Amtrak") is one such customer. In particular, for each of the four services at issue in this case--two types of domestic "inbound" (also known as "800") service, an inbound service from Canada, and a service allowing various Amtrak locations to contact each other--Amtrak pays a monthly charge computed by multiplying the number of minutes Amtrak consumes by a specific rate for that service. As a common carrier, Amtrak is exempt from subsection (b)(2), meaning that it must pay tax only if its long-distance charges fall within subsection (b)(1). 26 U.S.C. § 4253(f).

Amtrak initially paid the tax, but believing its service to be nontaxable under subsection (b)(1), it filed a refund claim with the Internal Revenue Service (IRS). Receiving no response, Amtrak filed suit in the U.S. District Court for the District of Columbia. *Cf.* 26 U.S.C. § 6532(a)(1) (requiring taxpayer to wait six months before filing suit). The district court, joining a chorus of other federal courts, found subsection (b)(1) inapplicable because Amtrak's charges did not vary by distance, ***376** and accordingly granted summary judgment for Amtrak. *Nat'l R.R. Passenger Corp. v. United States,* 338 F.Supp.2d 22 (D.D.C.2004); *see also OfficeMax, Inc. v. United States,* 428 F.3d 583 (6th Cir.2005) (resolving this issue in favor of taxpayer), *aff'g* 309 F.Supp.2d 984 (N.D.Ohio 2004); *Am. Bankers Ins. Group v. United States,* 408 F.3d 1328, 1331-1337 (11th Cir.2005) (same), *rev'g* 308 F.Supp.2d 1360 (S.D.Fla.2004); *Hewlett-Packard Co. v. United States,* No. C-04-03832, 2005 WL 1865419, at *2-*5, 2005 U.S. Dist. LEXIS 19972, at *5-*13 (N.D.Cal. Aug.5, 2005) (same); *Reese Bros., Inc. v. United States,* No. 03-CV-745, 2004 WL 2901579, at *3-*13, 2004 U.S. Dist. LEXIS 27507, at *10-*44 (W.D.Pa. Nov.30, 2004) (same); *Fortis, Inc. v. United States,* No. 03 Civ. 5137, 2004 WL 2085528, at *5-*13, 2004 U.S. Dist. LEXIS 18686, at *17-45 (S.D.N.Y. Sept.16, 2004) (same); *Am. Online, Inc. v. United States,* 64 Fed.Cl. 571, 576-581 (Fed.Cl.2005) (same); *Honeywell Int'l, Inc. v. United States,* 64 Fed.Cl. 188, 198-203 (Fed.Cl.2005) (same).

The government now appeals. Our review is de novo. *Dunaway v. Int'l Bhd. of Teamsters,* 310 F.3d 758, 761 (D.C.Cir.2002).

## II.

We begin, as we must, with the statute's language. *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). Subsection (b)(1) imposes a tax only when "there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication." 26 U.S.C. § 4252(b)(1). Amtrak's charges do not vary by both time and distance, so that would seem to end the matter. The government nonetheless urges us to find ambiguity in the statute,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

arguing that because Congress sometimes uses the word "and" disjunctively, we should interpret the statute to require only that the charge vary with distance *or* elapsed transmission time. We may not do so.

In 1965, when Congress passed section 4252(b), MTS charges varied by both time and distance. Reading "and" conjunctively therefore makes the statute mirror the MTS system, precisely what Congress intended. *See supra* at 375. To be sure, Congress does sometimes use the word "and" disjunctively. Indeed, it did so in this very statute: No one would contend that a service must satisfy both subsection (b)(1) and subsection (b)(2) to constitute "toll telephone service," as a conjunctive reading of the "and" separating the two sections would require. Because the two subsections describe separate types of services, not criteria for a single service, such a reading would be absurd. In contrast, reading the "and" that separates "distance" from "elapsed transmission time" conjunctively produces just the result Congress intended, i.e., a tax on MTS service.

The government relies heavily on *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), but there too a conjunctive reading would have done nothing to further Congress's clear intent. The statute at issue in *Slodov* imposed penalties on "[a]ny person required to collect, truthfully account for, and pay over any tax ... who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof." *Slodov*, 436 U.S. at 245, 98 S.Ct. 1778 (quoting 26 U.S.C. § 6672). Having assumed control of a corporation after taxes had already been "collect[ed]," Slodov could not possibly have done all three acts--"collect, truthfully account for, and pay over" the tax. *Id.* at 246, 98 S.Ct. 1778. He therefore believed that the statute had no effect on him. *Id.* *377 The Supreme Court rejected this argument as inconsistent with the statute's purpose, holding that the phrase in question "was necessary to insure that the penalty ... would be read as applicable only to failure to pay taxes which *require collection*, that is, third-party taxes," as distinguished from "*direct* taxes such as employer FICA and income taxes." *Id.* at 249, 98 S.Ct. 1778. In other words, "the phrase ... was meant to limit § 6672 to persons responsible for collection of third-party taxes and not to limit it to those persons in a position to perform all three of the enumerated duties." *Id.* at 250, 98 S.Ct. 1778. The provision's legislative history supported the Supreme Court's interpretation and gave no hint that Congress intended a conjunctive reading. *Id.* at 249, 98 S.Ct. 1778. Here, by contrast, reading "and" conjunctively accomplishes exactly what Congress intended.

For the same reason, *United States v. American Trucking Ass'ns*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), does not help the government. Reading subsection (b)(1) literally produces Congress's intended result, not "absurd or futile results" or results "plainly at variance with the policy of the legislation as a whole." *Id.* at 543, 60 S.Ct. 1059 (internal quotation marks omitted). Congress meant to tax all long-distance telephone service existing in 1965, and it succeeded. At that time, moreover, Congress had no reason to ensure that the statute covered all future service, as the 1965 Act phased the tax out by the end of that decade.

Even Revenue Ruling 79-404, upon which the government relies, conceded that charges like Amtrak's do not fall within the statute's language. *See* Rev. Rul. 79-404, 1979-2 C.B. 382. In that ruling, the IRS considered whether communications to the United States from ships at sea fell within section 4252(b). *Id.* at 382. Like Amtrak's service, the charge for such communications varied only with the call's duration. "Literally," the IRS concluded, "the service provided in this case does not come within the definition of ... 'toll telephone service' as ... currently defined in section 4252 of the Code ... because the charge for such service does not vary with distance and therefore does not meet the requirement of section 4252(b)(1)." *Id.*

Although the IRS nonetheless concluded that communications from ships should be taxed because "[t]he intent of the statute would be frustrated if a new type of service otherwise within such intent were held to be nontaxable merely because charges for it are determined in a manner which is not within the literal language of the statute," *id.* at 383, we may not take that approach here. Indeed, the Supreme Court has expressly rejected this type of reasoning. In *Iselin v. United States*, 270 U.S. 245, 46 S.Ct. 248, 70 L.Ed. 566 (1926), the Court considered a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

provision that taxed the sale of theater tickets sold at places other than ticket offices. The provision at issue, paragraph 3, based the amount of the tax on the difference between the "established price" at the ticket office and the price for which the ticket was sold. *Id.* at 247, 46 S.Ct. 248. Having received and sold a complimentary ticket, the taxpayer argued that because the ticket she sold had no "established price," the statute imposed no tax on the sale. *Id.* at 248, 46 S.Ct. 248. The Court summarized the government's argument as follows:

> It argues that Congress clearly intended to tax all sales of tickets; that there is in the section no indication of intention to exempt from the tax any sale of tickets or any resale at a profit; that the receipts here taxed are in character substantially similar to those specifically described in paragraph 3; that this general purpose of Congress should be given ***378** effect, so as to reach any case within the aim of the legislation; and that the Act should, therefore, be extended by construction to cover this case.

270 U.S. at 250, 46 S.Ct. 248. Rejecting this argument, the Supreme Court held that because no particular provision referred to this kind of transaction, and because Congress described with some care the various situations in which tickets were sold, it would enforce the statute's "plain and unambiguous" language. *Id.* at 250-51, 46 S.Ct. 248. Even assuming no congressional intent "to exempt from taxation this class of tickets," *id.* at 250, 46 S.Ct. 248, the Court reasoned, "[w]hat the government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function." *Id.* at 251, 46 S.Ct. 248.

The government makes precisely the same argument here that it did in *Iselin*:

> It argues that Congress clearly intended to tax all [long-distance telephone charges]; that there is in the section no indication of intention to exempt from the tax any [long-distance telephone charges]; that the [charges] here taxed are in character substantially similar to those specifically described in [section 4252(b)(1) ]; that this general purpose of Congress should be given effect, so as to reach any case within the aim of the legislation; and that the Act should, therefore, be extended by construction to cover this case.

*Iselin* requires that we give the same reply: "What the government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function." And lest *Iselin* 's vintage lead one to doubt its continuing validity, just last year the Supreme Court relied on it to reject as not "a construction of [the] statute, but, in effect, an enlargement of it by the court" an interpretation that would have required adding a word to the statute's text. *Lamie v. U.S. Tr.*, 540 U.S. 526, 538, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (quoting *Iselin*, 270 U.S. at 251, 46 S.Ct. 248) (alteration in original).

### III.

We can quickly dispose of the government's remaining arguments. Its claim that Congress's extensions of the tax following the 1979 revenue ruling amounted to an implicit adoption of the IRS's reasoning fails for two reasons. First, as the ruling itself acknowledges, the statute's language does not cover charges varying only by time. Enacting this language would therefore be a bizarre way for Congress to codify an IRS ruling applying the tax to such charges. *See* *Brown v. Gardner*, 513 U.S. 115, 121, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) ("There is an obvious trump to the reenactment argument, however, in the rule that where the law is plain, subsequent reenactment does not constitute an adoption of a previous administrative construction." (internal quotation marks omitted)). Second, the government offers no evidence that Congress ever knew of the revenue ruling. *See* *Pub. Citizen, Inc. v. HHS*, 332 F.3d 654, 669 (D.C.Cir.2003) (holding reenactment argument "has little weight absent some evidence of (or reason to assume) congressional familiarity with the administrative interpretation at issue").

The government urges us to read the statute more broadly because when changing the definition of "toll telephone service" in 1965, "Congress did not intend to dramatically reduce the scope of the tax ***379** base." Appellant's Br. 25. We agree that the 1965 amendment caused no immediate reduction in the tax base, as revised section 4252(b)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

succeeded in taxing all then-existing long-distance service. But because Congress replaced the pre-1965 general language--imposing tax when "there is a toll charge"--with a precise description of MTS and WATS, we do not agree that the tax extends to all future service, however billed.

[2] Nor do we see any merit to the government's argument that because the rate for calls from Canada to the United States is higher than the rate for domestic calls, Amtrak's charges actually vary by distance. These rates differ because calls to and from Canada cross the U.S./Canadian border, not because Canada is further away. For example, as Amtrak points out, calls from Niagara Falls, New York and from Niagara Falls, Canada to the same point in the United States travel the same distance yet incur different charges. Likewise, calls from Vancouver to Seattle cost more than calls from Miami to Seattle even though the latter travel vastly greater distances.

Finally, although the parties discuss whether we should defer to Revenue Ruling 79-404 pursuant to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), or *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), we need not resolve that question. Even were we to afford *Chevron* deference to the ruling, we could not let stand an agency decision that deviates from the statute's unambiguous meaning. *Chevron*, 467 U.S. at 842-43, 104 S.Ct. 2778.

We have considered the government's remaining arguments and found them to lack merit. Because the district court's well-reasoned opinion properly ascertains the statute's meaning, we affirm the grant of summary judgment to Amtrak. True, this interpretation limits the effectiveness of the tax on long-distance calls, but because section 4252(b)(1) is unambiguous, the IRS must take its case to Congress, not this court.

*So ordered.*

431 F.3d 374, 96 A.F.T.R.2d 2005-7332

**Briefs and Other Related Documents (Back to top)**

• 2005 WL 1378741 (Appellate Brief) Brief for the Appellee (Jun. 01, 2005)Original Image of this Document (PDF)

• 04-5421 (Docket) (Nov. 30, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.