H

United States District Court,W.D. Pennsylvania.
REESE BROTHERS, INC., Plaintiff,
v.
UNITED STATES OF AMERICA, Defendant.
**No. 03-CV-745.**

Nov. 30, 2004.

Stanley M. Stein, Feldstein, Grinberg, Stein & McKee, Pittsburgh, PA, Stephen Rosen, Henry D. Levine, Levine, Blaszak, Block & Boothby, L.L.P., Bradley S. Waterman, Washington, DC, for Plaintiff.
Albert W. Scholiaert, Pittsburgh, PA, R. Scott Clarke, Washington, DC, for Defendant.

ORDER

MCVERRY, J.
*1 AND NOW, this *30th* day of *November*, 2004, after the plaintiff, Reese Brothers, Inc., submitted a Motion for Summary Judgment, and after a Motion for Summary Judgment was submitted by defendant, United States of America, and after a Report and Recommendation was filed by the United States Magistrate Judge granting the parties ten days after being served with a copy to file written objections thereto, and upon consideration of the objections filed by defendant, and the response to those objections filed by plaintiff, and upon independent review of the motion and the record, and upon consideration of the Magistrate Judge's Report and Recommendation, which is adopted as the opinion of this Court,

IT IS ORDERED that plaintiff's Motion for Summary Judgment [Docket No. 7] is granted; and the defendant's Motion for Summary Judgment [Docket No. 14] is denied.

IT IS FURTHER ORDERED that final judgment of this Court is entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

REPORT AND RECOMMENDATION

HAY, Magistrate J.

I. *RECOMMENDATION*

It is respectfully recommended that the motion for summary judgment submitted on behalf of plaintiff (Docket No. 7) be granted; and the motion for summary judgment submitted on behalf of defendant (Docket No. 14) be denied.

II. *REPORT*

Presently before this Court for disposition are cross motions for summary judgment brought by plaintiff, Reese Brothers, Inc. ("Reese") and defendant, the United States of America.

Reese commenced this action under 26 U.S.C. §§ 6532 and 7422, seeking reimbursement of federal excise tax in the amount of $345,351.53, it claims it overpaid to defendant.

According to the record, Reese, a Pennsylvania corporation, purchased intrastate and interstate long distance voice services from LCI International Telecom Corp. ("LCI"), Qwest Communications Corporation ("Qwest") and MCI Telecommunications Corporation ("MCI") from July 1, 1998 through March 31, 2002. FN1 LCI, Qwest and MCI collected federal excise tax on these various services and remitted them to the Internal Revenue Service ("IRS"). FN2 On November 21, 2001, Reese filed claims with the IRS for a refund of $319,496.33 for the federal excise taxes collected for the services rendered from July 1, 1998 through June 30, 2001. FN3 On August 2, 2002, Reese filed claims with the IRS for a refund of $26,048.38 for the federal excise taxes collected for the services rendered from July 1, 2001 through March 31, 2002. FN4 In both instances, Reese claimed that it was entitled to the refund because it was not charged for the services based on the distance of the telephone calls and, thus, the services were not subject to the federal excise tax. The IRS, it appears, received the refund claims on November 26, 2001, and August 7, 2002, respectively, but has not responded to them. FN5 Consequently, Reese filed the instant complaint on May 22, 2003, seeking a refund of the taxes paid.

FN1. Plaintiff's Exhibit 1: Affidavit of Ralph Reese ("Reese Aff."), ¶¶ 3-9; Plaintiff's Exhibit 2: LCI Agreement; Plaintiff's Exhibit 3-5, 6: Qwest Agreements and Qwest Pennsylvania Tariff,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

respectively; Plaintiff's Exhibits 7, 8: MCI Agreement and MCI Pennsylvania Tariff, respectively (Docket No. 7).

FN2. Reese Aff. ¶ 10. *See* Supplemental Reese Aff. ("Suppl. Reese Aff."), ¶¶ 2, 3; Exhibit A to Suppl. Reese Aff.: Copies of Reese's canceled checks remitted to LCI, Qwest and MCI for services (Docket No. 19).

FN3. Plaintiff's Exhibit 9: Reese's Claim for Refund filed on November 21, 2001 (Docket No. 7).

FN4. Plaintiff's Exhibit 10: Reese's Claim for Refund filed on August 2, 2002 (Docket No. 7). In its first amended complaint, Reese reduced the amount of the refund sought for services provided between July 1, 2001 and March 31, 2002, to $25,855.20 thereby reducing the aggregate amount sought to $345,351.53. *See* First Amended Complaint, ¶ 13 (Docket No. 5); Plaintiff's Statement of Undisputed Facts, ¶¶ 17, 21; Defendant's Response and Counter-statement of Undisputed Facts, ¶¶ 17, 21.

FN5. *See* Plaintiff's Statement of Undisputed Facts, ¶¶ 16, 18 (Docket No. 7); Defendant's Response and Counter-statement of Undisputed Facts, ¶¶ 16, 18 (Docket No. 16).

*2 Cross-motions for summary judgment have now been filed in which the parties largely dispute the meaning of the word "and" that appears in the portion of the Internal Revenue Code under which the federal excise tax on toll telephone service is imposed. FN6

FN6. We note here that defendant initially argued in its motion that subject matter jurisdiction was wanting because plaintiff had failed to demonstrate that it had actually paid the excise tax at issue. Apparently satisfied by the copies of cancelled checks submitted by plaintiff in conjunction with its responsive brief (Docket No. 19), defendant now concedes that jurisdiction lies with the Court. *See* Docket No. 23. Consequently, we have not addressed the issue.

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ. P. 56(c). *See* *Marzano v. Computer Science Corp.*, 91 F.3d 497, 501 (3d Cir.1996). In deciding a motion for summary judgment the court must view all inferences in a light most favorable to the non-moving party. *Id.*, citing *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994). The non-moving party, however, may not rely on bare assertions, conclusory allegations or mere suspicions to support its claim but must demonstrate by record evidence the meritorious nature of the claim. *Orsatti v. New Jersey*, 71 F.3d 480, 484 (3d Cir.1995).

Section 4251 of the Internal Revenue Code ("the Code"), imposes a three percent tax on amounts paid for "communications services," which includes "toll telephone service." 26 U.S.C. §§ 4251(a)(1), (b)(1), (b)(2). FN7 The Code further defines "toll telephone service" as:

FN7. Although the person paying for the telephone service is responsible for the tax imposed, the service provider is required to collect the tax from its customers and remit it to the government. *Office Max, Inc. v. United States*, 309 F.Supp.2d 984, 988 n. 5 (N.D.Ohio 2004). *See* 26 U.S.C. § 4251(a)(2).

(1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and (B) the charge is paid within the United States, and
(2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

26 U.S.C. § 4252(b).

This version of § 4252 was adopted in 1965, FN8 and appears to reflect an effort by Congress to conform the definition of "toll telephone service" to the long distance pricing methods used by AT & T which held a monopoly on long distance service at the time. FN9 AT & T offered either Message Telephone Service ("MTS"), where subscribers were charged based on tolls which were calculated according to the elapsed time of each telephone call and the mileage band that corresponded to the actual distance of the call, or Wide Area Telephone Service ("WATS"), where subscribers were charged a flat fee for unlimited calls or calls up to a certain hourly limit. FN10

FN8. *See* Excise Tax Reduction Act of 1965, Pub.L. 89-44, § 302, 79 Stat. 136, 146.

FN9. Defendant's Exhibit 2: Declaration of Alan Pearce ("Pearce Decl."), ¶¶ 23, 25 (Docket No. 14).

FN10. Pearce Decl. ¶¶ 17, 24.

Since then, however, largely because AT & T no longer has a monopoly and wireless service has been introduced, the billing methods for long distance services have changed. Indeed, AT & T and other long distance carriers have abandoned the mileage bands and have aggregated them into one band that covers the entire continental United States. FN11 Thus, it appears that charges for interstate long distance services no longer vary by the distance of the call. FN12

FN11. Pearce Decl. ¶¶ 29, 35.

FN12. Defendant's Exhibit 1: Declaration of Paul B. Vasington ("Vasington Decl."), ¶ 16 (Docket No. 14).

*3 Plaintiff contends that because the toll rates for long distance services are no longer dependent on mileage bands and because § 4252(b)(1) plainly imposes the tax on long distance services only where the charges are based on both the distance of the call *and* the elapsed transmission time of a call, the services provided to it are not subject to the tax.

Defendant, on the other hand, argues that the nature of the word "and" in this particular context renders the statute ambiguous thereby requiring the Court to look beyond the statute to decipher its meaning. Defendant contends that the legislative history as well as an IRS revenue ruling which interprets § 4252(b)(1) indicate that Congress intended for all long distance calls to be taxed and that, to give effect to that intent, the word "and" as used in 4252(b)(1) is properly construed as "or."

We note at the outset that this precise controversy has recently been decided by four other district courts. Two of the four have rendered published opinions in which they, interestingly, have reached different results. *Compare American Bankers Ins. Group, Inc. v. United States,* 308 F.Supp.2d 1360 (S.D.Fla.2004) ("*ABIG*" ) (Finding, based on the purpose of §§ 4251 and 4252, that long distance service was taxable even though charges were based on time and not distance), *with OfficeMax v. United States,* 309 F.Supp.2d 984 (N.D.Ohio 2004) ("*OfficeMax*" ) (Finding that, under plain meaning of § 4252(b)(1), charges had to vary with both distance and elapsed time to be taxable). The two unpublished cases agreed with the *OfficeMax* Court finding that the plain meaning of the statute dictates that the long distance services at issue are not subject to the tax because they did not, as required under the statute, vary with both distance and elapsed transmission time. *See Fortis, Inc. v. United States,* 2004 WL 2085528 (S.D.N.Y. September 16, 2004); *National Railroad Passenger Corp.,* 2004 WL 2098849 (D.D.C. September 20, 2004).

The positions taken by the parties in the instant case are largely similar to those proffered by the parties in *ABIG* and *OfficeMax*. For the following reasons, we agree with the reasoning of the Court in *OfficeMax*.

In interpreting a statute, the role of the Courts is to give effect to Congress's intent. *Rosenberg v. XM Ventures,* 274 F.3d 137, 141 (3d Cir.2001). "Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with an examination of the plain language of the statute." *Id.* If the statutory language is clear and unambiguous, no further inquiry is necessary. Where an ambiguity exists, however, the Court may look beyond the statute to the legislative history to determine congressional

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

intent. *Ross v. Hotel Employees and Restaurant Employees Intern. Union*, 266 F.3d 236, 245 (3d Cir.2001), *cert. denied*, 534 U.S. 1162, 122 S.Ct. 1172, 152 L.Ed.2d 116 (2002).

*4 Determining whether the language of a statute is ambiguous in the first instance requires the Court to examine "the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *In re Price*, 370 F.3d 362, 369 (3d Cir.2004), quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). As recently found by the Court of Appeals for the Third Circuit, however,

ambiguity does not arise merely because a particular provision can, in isolation, be read in several ways or because a statute contains an obvious scrivener's error. *Lamie v. United States Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Nor does it arise if the ostensible plain meaning renders another provision of the Code superfluous. *Id.* at 1031. Rather, a provision is ambiguous when, despite a studied examination of the statutory context, the natural reading of a provision remains elusive.

*In re Price*, 370 F.3d at 369.

Although it cannot be disputed that in certain contexts "and" is sometimes used in the disjunctive, its ordinary meaning has a conjunctive connotation. *United States v. Sherman*, 150 F.3d 306, 316 (3d Cir.1998) (" 'and' is conjunctive."). *See Crooks v. Harrelson*, 282 U.S. 55, 58, 51 S.Ct. 49, 75 L.Ed. 156 (1930); *Bruce v. First Federal Savings and Loan Association of Conroe, Inc.*, 837 F.2d 712, 715 (5th Cir.1988). *See also ABIC*, 308 F.Supp.2d at 1365, quoting *United States v. Bremnick*, 908 F.Supp. 1004, 1015 (D.Mass.1995) ("Ordinary use of the term "or" in a statute signifies a disjunctive requirement, while "and" signifies a conjunctive one.") Thus, unless reading "and" in the conjunctive would render § 4252(b)(1) meaningless or defy common sense, the statute should not be found ambiguous. *In re Price*, 370 F.3d at 369; *ABIG*, 308 F.Supp.2d at 1365 (Finding that the plain meaning of a statute should be given effect unless that interpretation defies common sense.)

Here, in our view, reading § 4252(b)(1) as requiring that the toll charge vary in amount with both the distance and the time elapsed is neither unclear nor defies common sense. Indeed, as found by the Court in *OfficeMax*, both time and distance were, in fact, factors in determining charges for telephone service in 1965 when the amendment under scrutiny was enacted. *OfficeMax*, 309 F.Supp.2d at 993 n. 12, 995. It therefore appears logical to conclude that Congress intended the word "and" to be read conjunctively thereby reflecting the manner in which calls were billed at the time. *Id.* The fact that billing methods have changed and long distance calls are no longer charged based on distance does not alter Congress's intent in 1965 when it amended the statute. *Id.*

Further, as the *OfficeMax* Court opined, if "and" were read in the disjunctive, as defendant would have us do, a call would still fall under the definition of "toll telephone service" even when there is no variation in distance or in the distance toll rate applied. *OfficeMax*, 309 F.Supp.2d at 993-94. Such a reading, however, would effectively eliminate the distance requirement from the statute and render Congress's reference thereto superfluous. *Id.* Because courts "should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous" it does not appear that "and" is properly read as "or" under these particular circumstances. *Rosenberg v. XM Ventures*, 274 F.3d at 142.

*5 Although defendant has cited a number of cases for the proposition that "and" can mean "or," it has not been disputed that in certain contexts "and" is properly interpreted as such in order to effectuate congressional intent. The fact that Congress may have intended "and" to mean "or" in other statutes or even other provisions of this statute, however, does not compel a different result here. FN13

FN13. Indeed, "communications services" is defined in § 4251(b)(1) as local telephone service, toll telephone service, *and* teletypewriter exchange service. "And" also joins §§ 4252(a)(1) and (a)(2) as well as §§ 4252(b)(1) and (b)(2). In all three instances, it appears clear that "and" is meant to be read either cumulatively or in the disjunctive. That

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fact, however, does not require "and" to be read disjunctively everywhere it is used in the statute. *See* Brown v. Garner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) ("Ambiguity is not a creature of definitional possibilities but of statutory context.") If that were the case, under § 4252(b)(1), taxable "toll telephone service" would be those services that are charged based on distance or elapsed time or where the charge is paid within the United States. Such an interpretation would appear to encompass all telephone communications and there would be little need for the rest of the statute. As such, each provision of the statute should be read in its own context. *See In re Price,* 370 F.3d at 1031; Rosenberg v. XM Ventures, 274 F.3d at 142.

Moreover, in Slodov v. United States, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978) ("*Slodov*" ), upon which defendant principally relies, the statute at issue was 26 U.S.C. § 6672 which imposes personal liability on "any person required to collect, truthfully account for, and pay over any tax imposed by this title." *Id.* at 245. The petitioner argued that he could not be held liable unless he was responsible for all three duties since the provision was phrased in the conjunctive. The Court disagreed finding not only that petitioner's position was at odds with the statute's purpose to assure payment of withheld taxes, but that Congress, albeit inartfully, was trying to clarify the type of tax to which the penalty would apply (*i.e.*, those taxes which the employer was required to collect from third party employees and turned over to the Treasury, as opposed to those taxes paid directly to the Treasury) and was not describing the individual to whom the penalty would apply. *Id.* at 248-250. Otherwise, the Court concluded, a person charged with collecting the taxes but who willfully failed to do so could escape liability by simply by resigning his position prior to the quarter's end. *Id.*

Here, unlike in *Slodov,* Congress's use of the word "and" in its ordinary sense accomplished the desired result of taxing long distance service according to AT & T's billing practices at the time. Thus, there is no basis upon which to find that Congress intended the word to have a different connotation than the ordinary or literal meaning, as was the case in *Slodov.*

Similarly, in *Peacock v. Lubbock Compress Co.,* 252 F.2d 892 (5th Cir.), *cert. denied,* 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958), at issue was whether an employer was required to pay overtime wages or whether it was exempt under 29 U.S.C. § 207(a), which created an exception for employers "engaged in the ginning and compressing of cotton." Because the defendant-company was not engaged in the business of ginning cotton but only compressed it, plaintiff-employees brought suit seeking overtime wages. The Court, however, found that Congress did not intend for "and" in this context to be read in the conjunctive since at the time the statute was amended ginning cotton and compressing cotton were two separate operations that were "never carried on together." *Id.* at 893. Thus, reading "and" in its ordinary meaning would effectively eliminate all cotton production from the exemption which Congress could have accomplished by not referencing it at all. *Id.* at 894. Because, however, Congress intended to exempt all agriculture employers from paying overtime wages, the Court held that "and" should not be read literally and that the performance of either ginning or compressing cotton was exempt under the statute. *Id.* at 895.

*6 Unlike in *Peacock,* reading § 4252(b)(1)'s "and" in the conjunctive does not appear to run counter to the statute's purpose as long distance telephone service was in fact charged based on both distance and elapsed transmission time when § 4252(b)(1) was last modified. Thus, reading "and" in its ordinary meaning appears to give effect to Congress's intent at the time and there is no reason to depart from its literal meaning.

Defendant also contends that, notwithstanding whether "and" in the particular context is ambiguous, there are other ambiguities in the statute which require the Court to resort to the legislative history.

Whether or not another provision in the statute is ambiguous, however, is not at issue here. Nevertheless, we disagree with defendant's assessments. First, defendant reads § 4252(b)(1) was requiring that a single toll charge for a single phone call vary in amount, and argues that such a reading is "meaningless" because a single number cannot

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

vary with itself. FN14 The obvious meaning of the provision, however, particularly when read in conjunction with § 4252(b)(2), is that where the charge for each call is assessed on an individual basis and the charges vary in amount from call to call depending on the distance and time elapsed, the service is covered under the provision. This distinguishes § 4252(b)(1) from the services described in § 4252(b)(2) which are not charged on a per-call basis but rather are assessed at a flat rate or based on the total elapsed transmission time for calls made during a billing period.

FN14. Defendant's Brief, p. 12 (Docket No. 15).

Similarly, although defendant also makes much of the fact that toll charges cannot be calculated from distance and time alone and that any variance would have to be in dollars and cents, it explains elsewhere in its brief that in 1965 charges were calculated by multiplying the elapsed time by a per-minute toll rate which was determined by matching the distance of a call with one of eleven mileage bands. FN15 Thus, it would appear that a charge that varies with distance necessarily does so because the rate for that call varies by distance. FN16

FN15. Defendant's Brief at p. 5-6.

FN16. *See* Pearce Decl. ¶ 17.

Finally, defendant asserts that the statute is beyond plain meaning because Congress has included under the definition of "toll telephone service," WATS calls for which there is no "toll charge" for individual calls. FN17 The fact that there is no toll charge for individual calls under the WATS, however, does not negate the fact that § 4252(b)(2) describes a service where a charge is made for an unlimited number of calls or for a fixed number of hours to or from persons outside the local telephone system area. Indeed, defendant also allows that by adding § 4252(b)(2) to the statute in 1965 as a separate and alternative description of "toll telephone service," Congress intended to bring all long distance telephone calls (other than calls made using private communications services) as they were then billed within the scope of the tax. FN18 Under these circumstances, we are at a loss to see an ambiguity or the confusion that defendant would have us find.

FN17. *See* § 4252(b)(2); H.R.Rep. No. 89-433, 1965 U.S.C.C.A.N. at 1677.

FN18. Defendant's Brief at pp. 17-18, 20, 21.

*7 Thus, in our view, it is clear from the plain language of the statute that Congress intended to impose the tax on calls charged based on both distance and duration and that the Court need not resort to legislative history or other interpretive aids to ascertain that intent.

Defendant nevertheless argues that even if the language of § 4252(b)(1) is plain, its plain meaning cannot be invoked where it would lead to absurd results or results that are at odds with congressional intent. Defendant reiterates that it was Congress's intent to tax all individually charged long distance telephone calls under § 4252(b)(1) and that by defining "toll telephone service" as a communication for which the charge varies in amount with the distance and elapsed transmission time, Congress was merely identifying the manner in which AT & T billed for its services. Defendant contends that reading "and" in the conjunctive would run counter to Congress's intent since virtually all long distance calls would be exempt from the excise tax as they are no longer charged according to mileage bands.

It cannot be disputed that where the reading of a statute would produce an absurd result or one that is clearly contrary to legislative intent, courts may look past the plain language. *Lamie v. United States Trustee,* 540 U.S. 526, ----, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004); *Mitchell v. Horn,* 318 F.3d 523, 535 (3d Cir.2003). It does not appear, however, that this case falls into either category and, thus, we decline to attach another meaning to the statute other than that which appears on its face.

First, by arguing that Congress intended to reflect the fact that AT & T charged for long distance calls according to distance and time elapsed, defendant appears to concede that distance was a factor in determining the charge and that Congress intended to include it as such when it enacted the 1965 Amendments. Indeed, the fact that Congress intended to include distance as a factor in imposing the tax is only exemplified by the fact that Congress modified the previous definition under which all long distance call would have

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

been taxed to one which is significantly more narrow. FN19

FN19. Prior to the 1965 Amendments, "toll telephone service" was defined simply as "a telephone or radio message for which (1) there is a toll charge, and (2) the charge is paid within the United States." Excise Tax Technical Changes Act of 1958, Pub.L. 85-859, § 133(a), 72 Stat. 1285, 1290.

Moreover, Congress's 1965 Amendments included provisions to eliminate the tax altogether by 1969. FN20 It therefore does not appear absurd that Congress would have intended to narrow the scope of taxable long distance calls when it enacted the 1965 Amendments. The fact that billing methods have changed and calls are no longer charged using mileage bands does not negate the fact that Congress intended distance to be factor in 1965 or provide the basis for disregarding the statute's plain meaning. To the contrary, in our view, it simply means the statute is outdated. Indeed, as succinctly put by the District Court for the Southern District of New York in addressing this issue:

FN20. H.R.Rep. No. 89-433, 1965 U.S.C.C.A.N. 1645, 1676; S.Rep. No. 89-324, 1965 U.S.C.C.A.N.1960, 1724-25. *See Trans-Lux Corp. v. United States,* 696 F.2d 963, 966 (Fed.Cir.1982); *OfficeMax,* 309 F.Supp.2d at 999.

[u]pdating the statute is not the Court's role, particularly when doing so would require reading the term "distance" out of the statute. As the Supreme Court has instructed, "[t]here is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Lamie v. United States Tr.,* 540 U.S. 526, 124 S.Ct. 1023, 1032, 157 L.Ed.2d 1024 (2004) (internal quotation omitted). The Laime Court, in the face of an alleged drafting error by Congress, maintained that it was "unwilling[ ] to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome," *id.,* and that if the statute needs to be amended, that task should be left to Congress. *See id.* at 1034. This case does not even involve a drafting error; it involves a disconnect between a forty-year-old tax scheme and recent innovations in the telecommunications industry. It is plainly Congress's responsibility to decide whether to revise the statute to accommodate such developments.

*8 *Fortis, Inc. v. United States,* 2004 WL 2085528 *9 (S.D.N.Y. September 15, 2004).

Moreover, even if the Court were to look beyond the words of the statute to determine Congress's intent, it does not appear that either the legislative history or the revenue ruling relied upon by defendant compels a different result.

Defendant urges the Court to adopt the *ABIG* Court's finding that Congress's purpose in adopting the 1965 amendments was to preserve the statute's revenue raising propensities and expand its scope by collecting tax on all commercial long distance service. *See ABIG,* 308 F.Supp.2d at 1367-68.

Review of the reports accompanying the legislation, however, indicate that the changes enacted by Congress in 1965 were designed to 1) lower the rate for communication services from ten to three percent with subsequent one percent reductions each year until the tax was phased out completely; FN21 2) create an exemption for private communication services; FN22 3) repeal the excise tax on telegraph service and wire and equipment service; FN23 and, most relevant to the instant controversy, 4) update and modify the definitions of local telephone service, toll telephone service, and teletypewriter exchange service. FN24

FN21. H.R.Rep. No. 89-433, 1965 U.S.C.C.A.N. 1645, 1676; S.Rep. No. 89-324, 1965 U.S.C.C.A.N.1960, 1724-25. *See Trans-Lux Corp. v. United States,* 696 F.2d 963, 966 (Fed.Cir.1982); *OfficeMax,* 309 F.Supp.2d at 999.

FN22. H.R.Rep. No. 89-433, 1965 U.S.C.C.A.N. 1645, 1677; S.Rep. No. 89-324, 1965 U.S.C.C.A.N.1960, 1726. *See Trans-Lux Corp. v. United States,* 696 F.2d at 967; *OfficeMax,* 309 F.Supp.2d at 999.

FN23. H.R.Rep. No. 89-433, 1965 U.S.C.C.A.N. 1645, 1678; S.Rep. No. 89-324, 1965 U.S.C.C.A.N.1960, 1727. *See OfficeMax,* 309

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.Supp.2d at 999.

FN24. H.R.Rep. No. 89-433, 1965 U.S.C.C.A.N. 1645, 1676-77; S.Rep. No. 89-324, 1965 U.S.C.C.A.N.1960, 1725. *See* *Trans-Lux Corp. v. United States*, 696 F.2d at 967; *OfficeMax*, 309 F.Supp.2d at 999.

As previously stated, prior to the 1965 amendments, "toll telephone service" was defined simply as "a telephone or radio telephone message or conversation for which (1) there is a toll charge, and (2) the charge is paid within the United States." Excise Tax Technical Changes Act of 1958, P.L. 85-859, § 133, 72 Stat. at 1290. The definition adopted in 1965 clearly departed from this broad definition with the only explanation in the legislative history being:

The definitions of local telephone service (previously general telephone service), toll telephone service, and teletypewriter exchange service have been updated and modified to make it clear that it is the service as such which is being taxed and not merely the equipment being supplied.

Toll telephone service is defined as being a telephonic quality communication for which a toll charge is made which varies in amount with the distance and elapsed transmission time of individual communications, but only if the charge is paid within the United States.

H.R.Rep. No. 89-433, 1965 U.S.C.C.A.N. 1645, 1676-1677; S.Rep. No. 89-324, 1965 U.S.C.C.A.N. 1690, 1725.

Notwithstanding the more tailored definition of "toll telephone service" and the fact that the legislative history demonstrates that it was Congress's intent to define "toll telephone service" as "a telephonic quality communication for which a toll charge is made which varies in amount with the distance and elapsed transmission time," defendant maintains that the legislative history shows that Congress was merely clarifying the fact that only services, as opposed to equipment, were to be taxed and that it did not alter the type of services to be taxed other than to exclude private long distance communications and include WATS. Defendant argues that because of AT & T's monopoly, Congress's addition of "distance and elapsed transmission time" did not alter the fact that virtually all long distance calls were taxed but was merely an effort to define "toll telephone service" in a manner consistent with AT & T's pricing scheme.

*9 Nowhere in the legislative record, however, does it state that Congress intended to tax all long distance services. As argued by plaintiff, if that is what Congress intended, it could have simply said so. Instead, it took a broad definition, under which virtually all long distance calls-including plaintiff's-would have been taxed and replaced it with a narrow definition requiring that the charges associated with such calls vary with time and distance. FN25 Coupled with the fact that the overall goal at the time was to reduce the application of federal excise taxes so as to eliminate them completely by 1969, it is not unreasonable to find that Congress intended to tax toll telephone services as it so defined. FN26 *See* *Trans-Lux Corp. v. United States*, 696 F.2d at 966; *OfficeMax*, 309 F.Supp.2d at 999.

FN25. Under these circumstances, it is difficult to accept defendant's argument that there is no indication that Congress meant to narrow its definition of toll services other than to distinguish between equipment and services. To the contrary, the modification itself is very persuasive evidence that Congress intended to narrow the definition.

FN26. Notably, the 1965 legislation is entitled the "Excise Tax Reduction Act of 1965." *See* *ABIG*, 308 F.Supp.2d at 1367. Moreover, the fact that the expiration schedule was subsequently extended and ultimately abandoned does not alter Congress's intent in 1965. *See* Vasington Decl. ¶¶ 12, 13.

Defendant also relies on IRS Revenue Ruling 79-404 in which the IRS interpreted § 4252(b)(1) as imposing the excise tax on all long distance calls, including those that were charged without regard to distance, finding that the 1965 amendment in which "toll telephone service" was redefined merely reflected AT & T's billing methods at the time and that to eliminate non-distance sensitive calls from the excise tax would frustrate congressional intent. FN27 Defendant argues that the Revenue Ruling is entitled to

substantial deference because it is a reasonable interpretation invoked by the agency charged with implementing the statute.

FN27. Revenue Ruling 79-404, submitted by plaintiff as Exhibit 12 (Docket No. 7), concerned communications between ships or other off shore facilities and telephone subscribers in the United States for which the charges for the service varied only with the duration of each call.

The difficulty with defendant's argument, however, is two fold. First, the IRS conceded in the Revenue Ruling that its interpretation was contrary to the literal language of the statute since § 4252(b)(1) required that charges vary with both distance and time. Second, it does not appear that it deserves the "substantial deference" that defendant would have the Court grant merely because it was issued by the IRS.

As recently found by the Court of Appeals for the Third Circuit, "[w]e owe no deference to an agency interpretation plainly inconsistent with the relevant statute." *Mercy Catholic Medical Center v. Thompson,* 380 F.3d 142, 152 (3d Cir.2004). Moreover, an agency interpretation is entitled to substantial deference only where Congress generally delegated authority to the agency to make rules carrying the force of law and the interpretation was, in fact, promulgated in the exercise of that authority. *Id. See United States v. Mead Corp.,* 533 U.S. 218, 226-27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Indeed, as further found by the Court in *Mercy Catholic,* interpretive guidelines and other informal interpretations such as agency statements contained in opinion letters, policy statements, agency manuals, and enforcement guidelines are distinguishable from promulgated regulations because they lack the force of law and, thus, do not warrant substantial deference. *Id.* To hold otherwise, the Court held, "would unduly validate the results of an informal process." *Id.* at 155, quoting *Madison v. Resources for Human Development, Inc.,* 233 F.3d 175, 186 (3d Cir.2000). Finding, however, that an agency's informal interpretation can offer some guidance, the Court held that the weight that should be afforded such an interpretation "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control ." *Id. See United States v. Mead Corp.,* 533 U.S. at 226-27 (Deference is appropriate only when Congress delegated authority to the agency to make rules carrying the force of law and where the agency interpretation was promulgated in the exercise of that authority through notice-and-comment rule making.); *C.I.R. v. Schleier,* 515 U.S. 323, 336 n. 8, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) (Noting that an IRS's revenue ruling does not have the force and effect of regulations and could not be used to overturn the plain language of a statute.) FN28

FN28. In this manner, *Connecticut General Life Insurance Co. v. Commissioner of Internal Revenue,* 177 F.3d 136 (3d Cir.), *cert. denied,* 528 U.S. 1003, 120 S.Ct. 496, 145 L.Ed.2d 383 (1999), to which defendant cites for the proposition that Revenue Ruling 79-404 is entitled to substantial deference is distinguishable. At issue in that case was the deference to be afforded a federal *regulation* which Congress gave the Secretary of the Treasury authority to promulgate and, thus, carried the force of law. *Id.* at 143.

*10 Here, as already discussed, in our view the IRS's interpretation is plainly inconsistent with the plain language of the statute-a point which the IRS concedes in the Revenue Ruling. Moreover, as argued by plaintiff and as found by several courts, the cases upon which the IRS relied in the Revenue Ruling for the proposition that a Court may look beyond the plain meaning of a statute when the plain meaning would produce absurd or unreasonable results, appear to render the level of the IRS's consideration and the validity of its reasoning suspect.

In one such case, *United States v. American Trucking Association,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) ("*American Trucking*" ), the meaning of the word "employees" as used in section 204 of the Motor Carrier Act was at issue. Finding the term, which was otherwise undefined, ambiguous the Court looked to the history and purpose of the statute. Relying on the legislative history, the Court ultimately interpreted the term narrowly as being

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"limited to those employees whose activities affect the safety of operation" thereby limiting the jurisdiction of the Interstate Commerce Commission. *Id.* at 544. In so holding, the Court found that it was permissible for courts to interpret an ambiguous term according to the statute's purpose if the literal language would produce unreasonable results that were at odds with the policy of the legislation as a whole. *Id.*

Here, unlike in *American Trucking*, not only is the term at issue-"toll telephone service"-defined under the statute, but Congress expressly modified the definition to cover calls for which the charge varies with time and distance. Further, as already discussed, "and" does not appear to be ambiguous and reading the statute according to its plain meaning is not, contrary to defendant's position, absurd or unreasonable as charging did vary with distance and time when the 1965 amendments were enacted. Thus, resorting to the legislative history or evidence of the statute's purpose is not necessary here as it was in *American Trucking*.

Further, to the extent that the IRS consulted the legislative history when it issued Revenue Ruling 79-404, it found only that "[t]here is no indication that Congress otherwise intended to make changes in the type of service subject to the tax." FN29 That finding, however, is belied by the fact that Congress expressly modified the broad definition of "toll telephone service," *i.e.*, calls for which "there is a toll charge," to a narrow one defining it as a telecommunication for which the charge varied with distance and time. Moreover, having resorted to the legislative history, the IRS's finding that there was a lack of evidence regarding congressional intent does not appear sufficient to interpret the statute in a manner contrary to its plain meaning. Thus, it appears that the IRS's reliance on *American Trucking* and the statute's legislative history when it issued Revenue Ruling 79-404 was not well reasoned and, thus, it appears that the ruling should be given little, if any, deference.

FN29. Revenue Ruling 79-404, p. 3.

*11 In addition, the IRS's reliance on *Corn Products Refining Co. v. Commissioner*, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955) (*"Corn Products"* ), appears to be similarly misplaced as the Supreme Court significantly narrowed the holding of that case in *Arkansas Best Corp. v. Commissioner of Internal Revenue*, 485 U.S. 212, 108 S.Ct. 971, 99 L.Ed.2d 183 (1988) (*"Arkansas Best"* ). In *Corn Products*, the Court found that corn futures owned by a corn syrup refiner were not "capital assets" under § 1221 of the Internal Revenue Code even though they did not come within the literal language of the section's exclusions. Finding that "Congress intended that profits and losses arising from the everyday operation of a business can be considered as ordinary income or loss rather than capital gain or loss," the Court declined to read the capital-asset provision so broadly so as to defeat that intent. *Id.* at 52.

Subsequently, in *Arkansas Best*, the petitioner, relying on *Corn Products*, argued that despite the fact that the stock at issue fell under § 1221's literal definition of capital assets, the "assets acquired and sold for ordinary business purposes rather than for investment purposes should be given ordinary-asset treatment." *Arkansas Best*, 485 U.S. at 216. The Court, however, disagreed with the petitioner finding that *Corn Products* merely stood for the proposition that § 1221's exclusions should be read broadly and that the "hedging" transactions at issue therefore fell within the inventory exclusion. *Id.* at 220, 222. Thus, while *Corn Products*, may have found that the statutory provision at issue should not be read so broadly as to defeat Congress's purpose, the Supreme Court subsequently narrowed that holding finding, instead, that the case merely held that the transaction at issue fell within one of the statutory exclusions. *Id.* at 222. Under these circumstances, like with *American Trucking*, it does not appear that the IRS reliance on *Corn Products* was well reasoned and the level of its persuasiveness is such that it should be afforded little deference.

Defendant nevertheless argues that because Congress has reenacted § 4252(b)(1) since Revenue Ruling 79-404 was issued, it necessarily has approved of and concurred with the IRS's interpretation and, thus, the ruling should be given deference on this basis as well.

"Generally speaking, the doctrine of legislative reenactment assumes that when Congress reenacts legislation, it incorporates existing administrative and judicial interpretations of the statute into its reenactment." *Dutton v.*

*Wolpoff and Abramson,* 5 F.3d 649, 655 (3d Cir.1993). Where, however, the statutory language is unambiguous and the regulation is at odds with it, the reenactment doctrine does not apply. *Id. See Brown v. Gardner,* 513 U.S. 115, 121, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). Moreover, where there is no evidence that Congress was aware of the agency's interpretation in the first instance, the reenactment is without significance and is not entitled to deference. *Id.* at 121-123.

*12 In the instant case, not only does it appear that the language of § 4252(b)(1) is unambiguous but, as conceded by the IRS in the Revenue Ruling, it is at odds with the plain language of § 4252(b)(1). Further, there is no evidence that Congress was aware of Revenue Ruling 79-404 when § 4252(b)(1) was reenacted. Indeed, unlike a regulatory interpretation from which it can seemingly be presumed that Congress was aware of its existence since it was promulgated at Congress's behest, a revenue ruling such as 79-404 does not carry with it that same presumption. In fact, in both of the cases relied upon by defendant for the proposition that the reenactment doctrine applies in this case, a treasury regulation promulgated under Congress's grant of authority was at issue and not an informal ruling as is at issue here. *See United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001); *Cottage Savings Association v. Commissioner of Internal Revenue,* 499 U.S. 554 (1991). FN30 Under these circumstances, the fact that Congress continued to reenact § 4252(b)(1) after the IRS issued Revenue Ruling 79-404 appears to be of little significance and does not provide the basis for deferring to the ruling. *See National Muffler Dealers Association, Inc. v. United States,* 440 U.S. 472, 476-77, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979) (emphasis added) (Finding that the Court customarily defers to *regulations* because Congress has delegated to the Secretary of the Treasury and the Commissioner of the IRS the task of proscribing rules and regulations for the enforcement of the Internal Revenue Code.); *Madison v. Resources for Human Development, Inc.,* 233 F.3d at 186 (Drawing the distinction between an agency's interpretive guideline and an official regulation "promulgated after notice and-comment rule making.")

FN30. Moreover, the Court in *Cottage Savings* also found that the treasury regulation at issue was consistent with landmark precedents on the issue which were decided around the time of the statute's initial enactment, unlike in the instant case, where the revenue ruling is contrary to the statute's plain language and is based on precedent that is, in our view, clearly suspect. *See Cottage Savings Association,* 499 U.S. at 561.

Alternatively, defendant argues that even if § 4252(b)(1) requires charges to be assessed on the basis of both time and distance, plaintiff's telephone service would still be subject to the excise tax because the various contracts plaintiff entered into for long distant services imposed different rates on international, domestic interstate and domestic intrastate calls and that the rates for these calls were selected on the basis of distance.

This precise argument was made by the Government in *OfficeMax* and was rejected by the Court. Instead, the Court agreed with the plaintiff who argued, much as the instant plaintiff has, that differentiating between interstate, intrastate and international calls is solely for the purpose of allocating regulatory responsibility between the FCC and state regulators as set forth in the Communications Act of 1934 and that, although rates may differ between the jurisdictional classification, that is a result of the classification itself and the corresponding rate structures imposed by the relevant regulatory agency and not because of the distance of the call. FN31 *OfficeMax,* 309 F.Supp.2d at 995-96. Thus, different states may have different per-minute rates for intrastate calls that are unrelated to the distance the call travels just as intrastate and interstate rates could be the same for calls that travel different distances. *Id.* Further, in certain instances, an intrastate call could travel a longer distance that an interstate call. *See Fortis, Inc. v. United States,* 2004 WL 2085528 at *13.

FN31. It appears undisputed that the Communications Act of 1934 establishes a dual system for regulating telephone service whereby the FCC regulates interstate and international communications and state agencies control intrastate service. *See Louisiana Public Service*

> Comm'n v. FCC, 476 U.S. 355, 360, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). *See also* Pearce Decl. ¶ 26.

*13 Indeed, as pointed out by plaintiff, under the LCI contract in effect from July through December 1998, the charge for an interstate call from Pittsburgh to Los Angeles-a distance of approximately 2400 miles-is 5.1 cents per minute while the charge for an intrastate call from Pittsburgh to Philadelphia, a distance of only 300 miles, is 7.1 cents per minute. FN32 Under these circumstances, it does not appear that the distinctions between intrastate and interstate calls necessarily correspond to the distance the call travels but rather on the political jurisdiction in which the call originates and terminates.

> FN32. Plaintiff's Exhibit 2: LCI Agreement, p. 4.

Further, although defendant argues that plaintiff's answer to Interrogatory 2D leaves no doubt that MCI charged plaintiff a long distance rate based on distance and time, a review of plaintiff's interrogatory answer and relevant documents shows otherwise. Asked to describe its understanding of how the service charges were computed plaintiff responded, MCI first applied the distance-sensitive rates for Interstate Prism service set forth in MCI Tariff F.C.C. No.1 to REESE's invoices. MCI then credited REESE with the difference between the tariff rates and the non-distance sensitive rates set forth in Sections 3.1.1 and 3.1.2 of Attachment A of the MCI Agreement. The result is that the services are billed at the non-distance sensitive rates set forth in Sections 3.1.1 and 3.1.2 of Attachment A of the MCI Agreement. The credits for the difference between the rates in the MCI Agreement and the Tariff F.C.C. No.1 rates appear as the "P1 Discount" or the "Total SCA Adjustments" on the MCI invoices . FN33

> FN33. Defendant's Exhibit 3: Plaintiff's Answers to Interrogatories, No. 2D, p. 5 (Docket No. 14). We note here that tariffs are filed by the carriers and reflect rates approved by the regulatory agencies as being "just and reasonable." *See* Pearce Decl. ¶ 6.

Thus, plaintiff's conclusion is that MCI billed for its long distance services at the non-distance sensitive rates as set forth in the Specialized Customer Agreement entered into by Reese and MCI. Indeed, Section 3.1.1 of Attachment A to the Specialized Customer Agreement states that plaintiff is to pay "Postalized Rates" for Interstate MCI Prism Service and section 2.2 indicates that " 'Postalized Rates' shall refer to per minute rates for Services that are nondistance-sensitive." FN34 Thus, it appears that plaintiff contracted for and was actually charged a nondistance-sensitive rate by MCI. FN35

> FN34. Plaintiff's Exhibit 7: Specialized Customer Agreement and Attachment A (Docket No. 7).

> FN35. Although it appears that the rates MCI was obligated to charge for Interstate MCI Prism Service under the MCI Tariff F.C.C. No. 1 were distance sensitive, it appears that MCI, by applying a discount, only charged plaintiff the non-distance sensitive "Postalized" rate agreed upon when it entered into the Special Customer Arrangement with plaintiff. *See* Plaintiff's Exhibit 11; Section 3.1031 of MCI Tariff F.C.C. No. 1 (Docket No. 7); Plaintiff's Exhibit E: MCI Invoices (Docket No. 19). Thus, while MCI's invoices set forth the distance-sensitive rate, after the discount is factored in, plaintiff is actually charged the non-distance sensitive rate. *Id.*

It therefore appears that plaintiff's telephone services do not vary by distance and, thus, they do not constitute "toll telephone service" under § 4252(b)(1). As previously discussed, however, "toll telephone service" is also defined as:

(2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

26 U.S.C. § 4252(b)(2).

*14 Plaintiff contends that its services do not fall under this category of "toll telephone service" either since it is not permitted to make "unlimited calls" for a "flat amount" or "periodic charge." Instead, plaintiff argues, it is charged according to the duration of each individual call which is multiplied by an agreed upon rate and results in bills that vary from month to month. Moreover, plaintiff asserts that its services do not permit it to select a specific geographical area within which all calls made are subject to a flat charge.

Defendant counters arguing that plaintiff's services do fall with § 4252(b)(2) because it does indeed pay a "periodic charge" as evidenced by the fact that it receives monthly bills and that, contrary to plaintiff's assertion, it maintains the right to make an unlimited number of calls each month.

As found by the Court in *OfficeMax*, under the plain language of the statute, to fall under § 4252(b)(2), "the service must entitle the subscriber to make unlimited calls within a specific geographic area for a periodic charge that is to be determined as a flat amount or upon the basis of total elapsed transmission time." *OfficeMax*, 309 F.Supp.2d at 1006.

Here, it does not appear that the services provided to plaintiff fall under either scenario. First, plaintiff is not entitled to make unlimited calls within a specific geographical area. To the contrary, plaintiff must pay for each individual call and may make and receive calls to any location served by its carriers. Moreover, plaintiff is not charged a "flat amount" or one based on "total elapsed transmission time," but rather has varying charges each billing period depending on the number of calls, the duration thereof and the per minute rate for each call placed. Thus, it does not appear that plaintiff's long distance services fall within the ambit of § 4252(b)(2).

Finally, all else failing, defendant asks the Court to find plaintiff's telephone services taxable under § 4252(a), which defines "local telephone service" to which the excise tax applies. Section 4252(a) provides:

(a) Local telephone service.For purposes of this subchapter, the term "local telephone service" means-

(1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and

(2) any facility or service provided in connection with a service described in paragraph (1).

The term "local telephone service" does not include any service which is a "toll telephone service" or a "private communication service" as defined in subsections (b) and (d).

26 U.S.C. § 4252(a). Defendant's argument is based on the premise that, because Congress intended to tax all telephone services provided by common carriers, that plaintiff's services must fall under § 4252(a) if the Court finds that they are not taxable under § 4252(b).

*15 Notably, defendant does not specifically argue that plaintiff's telephone services fall with the definition of "local telephone service" but rather asks the Court to find 4252(a) applicable by default. As found by the Court in *OfficeMax*, however, it appears too much to conclude that plaintiff services qualify as "local telephone service" where they fail to meet a single requirement of the statutory definition of the term. *OfficeMax*, 309 F.Supp.2d at 1007. Moreover, to the extent that the Government would have us equate "local" with nationwide service, such an interpretation, in our view, is contrary to the plain or natural reading of the statute. *See Fortis, Inc. v. United States*, 2004 WL 2085528 at *15. As such, it does not appear that plaintiff's long distance services constitute "local telephone service" under § 4252(a).

Having concluded that the telephone services at issue do not fall under the definition of "local telephone service" under § 4252(a) or "toll telephone service" under § 4252(b), it appears that they are not taxable under § 4251 and plaintiff is entitled to a refund.

For these reasons, it is recommended that the motion for summary judgment submitted on behalf of plaintiff (Docket No. 7) be granted, and the motion for summary judgment submitted on behalf of defendant (Docket No. 14) be denied.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

W.D.Pa.,2004.
Reese Bros., Inc. v. U.S.
Not Reported in F.Supp.2d, 2004 WL 2901579 (W.D.Pa.), 94 A.F.T.R.2d 2004-7229

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.