**H**
Briefs and Other Related Documents

United States District Court,S.D. New York.
FORTIS, INC., Plaintiff,
v.
UNITED STATES OF AMERICA Defendant.
**No. 03 Civ. 5137(JGK).**

Feb. 14, 2005.

OPINION AND ORDER

KOELTL, J.
*1 The plaintiff, Fortis, Inc. ("Fortis"), seeks a refund from the Internal Revenue Service ("IRS") on excise taxes that Fortis remitted for certain long-distance telephone service. Fortis originally filed a motion seeking summary judgment in its favor on the liability of the Government on Fortis's claim to the refund. *See Fortis, Inc. v. United States*, No. 03 Civ. 5137, 2004 WL 2085528, *1 (S.D.N.Y. Sept. 16, 2004). The Government opposed the motion and filed a cross-motion for summary judgment dismissing the complaint on the grounds that the telephone service then at issue fell within the definition of taxable "toll telephone service" in 26 U.S.C. § 4252(b)(1), or, in the alternative, fell within the other definitions of taxable telephone services in 26 U.S.C. § 4252(b)(2). By Order dated September 16, 2004, the Court granted the plaintiff's motion for summary judgment and denied the defendant's cross-motion for summary judgment, except with respect to the narrow question of whether the plaintiff's inbound 800 service is taxable under Section 4252(b)(2). With respect to that issue, both the motion and cross-motion were denied. *Id.* at *16.

The parties dispute whether Fortis's inbound 800 services, "800 READYLINE" and "MEGACOM 800" are taxable "Wide Area Telephone Service" ("WATS") services under 26 U.S.C. § 4252(b)(2). FN1 The parties request a ruling on the taxability of these services, after which the parties shall provide the Court with a stipulation regarding the proper amount of any refund. The parties agree that the Court can decide the issue on all of the papers submitted and that there are no disputed issues of material fact.

FN1. WATS is a long-distance telephone service, which generally allowed subscribers, for a flat charge, to make unlimited calls within a defined area, sometimes limited as to the total elapsed time. *See Fortis, Inc.*, 2004 WL 2085528, at *3 (citations omitted). The parties agree that 28 U.S.C. § 4252(b)(2) generally described the WATS service introduced by AT & T in 1961. *See Fortis, Inc.*, 2004 WL 2085528, at *14.

II.

In the prior Opinion and Order dated September 16, 2004, the Court noted that it was unclear whether Fortis's inbound 800 service is taxable WATS service under Section 4252(b)(2). *See Fortis, Inc.*, 2004 WL 2085528, at *16. With respect to the taxability of READYLINE and MEGACOM services, the Court specifically noted that:
The mere labeling of Fortis's service as WATS does not necessarily mean that it is covered by § 4252(b)(2). Section 4252(b)(2) was enacted to cover the AT & T WATS service then in existence, and historically, inbound 800 services have been described as inbound WATS. But the issue is whether the service falls within the definition in § 4252(b)(2) involving a periodic charge, based on a flat rate or total elapsed transmission time, for unlimited calls to a specified area.

*Id.* FN2

FN2. Section 4252(b) defines "toll telephone service" as
(1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and (B) the charge is paid within the United States, and
(2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

area in which the station provided with this service is located.
26 U.S.C. § 4252(b).

The plain language of the statute indicates that Section 4252(b)(2) does not apply to services that charge for each individual call, but that it applies rather, to services that involve "periodic charges" for the privilege of an "unlimited number of telephonic communications" to or from all or a substantial portion of the persons in a specified area, whether that "periodic charge" is based on a flat fee or total elapsed transmission time. *See id.*, at *14; *accord* Office Max, Inc. v. United States, 309 F.Supp.2d 984, 1006 (N.D.Ohio 2004) ("to constitute 'toll telephone service,' the service must entitle the subscriber to make unlimited calls within a specific geographic area for a periodic charge that is to be determined as a flat amount or upon the basis of total elapsed transmission time.") Accordingly, the issue before the Court is whether MEGACOM and READYLINE services are billed according to a "periodic charge" system based on total elapsed transmission time, and therefore, taxable, or rather billed per individual call, and therefore, not taxable.

III.

*2 The parties appear to agree that the MEGACOM and READYLINE services at issue may be referred to as "tariffed" services prior to July 30, 2001, and as "detariffed" services on and after July 30, 2001. FN3 The Government notes that the plaintiff relies on Federal Communications Commission Tariffs ("F.C.C Tariffs") governing long-distance service through July 30, 2001, and on the AT & T Business Service Guide that has replaced the F.C.C. Tariffs for services provided on and after July 30, 2001. (*See* Letter from AUSA Benjamin H. Torrance to the Court ("Torrance Letter") dated January 11, 2005, at 2.) The Government also relies on the F.C.C. Tariffs for services provided prior to July 30, 2001 and the AT & T Business Service Guide for services provided on and after July 30, 2001. The inbound 800 services can therefore be analyzed in four relevant categories: (1) tariffed READYLINE service (prior to July 30, 2001); (2) tariffed MEGACOM service (prior to July 30, 2001); (3) detariffed READYLINE service (on and after July 30, 2001); and (4) detariffed MEGACOM service (on and after to July 30, 2001). Each of these four categories is reviewed below.

FN3. The Government uses the term "tariffed" to refer to services provided prior to July 30, 2001, and the term "detariffed" to refer to services provided on or after July 30, 2001. The plaintiff refers to the period prior to July 30, 2001 as "pre-detariffing," and to the period on or after July 30, 2001 as "post-detariffing." For convenience and consistency, the Court will also use the terms "tariffed" and "detariffed" as outlined above.

A.

The Government concedes that the F.C.C. Tariff applicable to READYLINE service prior to July 30, 2001 expressly specifies that tariffed READYLINE service usage is billed on a per call basis and therefore is not subject to the tax. (*See* Torrance Letter at 4; *see also* F.C.C. Tariff No. 2, § 6.4.2.B attached as Ex. B to Letter from Henry D. Levine to the Court ("Levine Letter") dated December 27, 2004.) Section 4252(b)(2)'s reference to a "periodic charge" means that Section 4252(b)(2) does not apply to services that charge by the individual call, *see* Fortis, Inc., 2004 WL 2085528, at *14. Accordingly, tariffed READYLINE service, which is billed on a per call basis, is not subject to the tax.

B.

Turning to tariffed MEGACOM service, the Government argues that this service is expressly billed under F.C.C. Tariff No. 2 "per hour of usage.... Charges for total chargeable hours of usage ... will be determined and rounded to the nearest cent." (F.C.C. Tariff No. 2, § 6.3.2.B attached as Ex. C to Levine Letter.) The Government argues that F.C.C. Tariff No. 2 is consistent with the express language of the Fortis-AT & T Contract Tariffs, which also provide for per hour billing of the tariffed MEGACOM service, and that tariffed MEGACOM service is thereby taxable under Section 4252(b)(2). The Government argues that the plaintiff has conceded that, in practice, the billing durations of the calls are first summed, then multiplied by a "per-time" rate. (*See* Torrance Letter at 2 (citing Levine

Letter at 4).) The Government contends that this practice is the "very definition" of per-time billing as opposed to per-call billing and thus should fall within Section 4252(b)(2). (*See id.*)

However, the billing explanation contained in the F.C.C. MEGACOM Tariff, and applied in the sample bills submitted by the plaintiff for tariffed MEGACOM service in January 2000 demonstrate that tariffed MEGACOM service usage is computed on a per call basis, with "a minimum time requirement of 30 seconds with additional increments on a per second basis" that is imposed depending on the duration of each individual call. (F.C.C. Tariff No. 2, § 6.3.2.B attached as Ex. C to Levine Letter; *see also* Invoice for Tariffed MEGACOM Service, January 2000, attached as Ex. G to Levine Letter.) The charge per call is then calculated by multiplying the duration of the call (consisting of the 30-second minimum and increments of one second) by the per second rate. The per second rate is based on the rate per hour, divided by 3600, which yields a per second rate. (*See* Contract Tariff 10725 § 7B (establishing a per hour rate of $ X.XX, or $.XXXXXXX per second); FN4 Invoice for Tariffed MEGACOM Service, January 2000, attached as Ex. G to Levine Letter (expressing usage amount of each call as the number of seconds per call multiplied by the $ 0.XXXXXXX second rate.) The total amounts of each of the call charges are added together to calculate the total monthly bill. (*See* Levine Letter at 4-5.)

FN4. Because the Contract Tariffs have been filed under seal, the rates are redacted.

*3 The plaintiff is not billed for a "periodic charge" for tariffed MEGACOM service based on "total elapsed transmission time." Instead, the plaintiff's bill varies each month depending on the number of calls and the duration of each call, multiplied by the per second rate applied to each call placed. Despite the "per hour of use" language of the Fortis AT & T Contract Tariffs, and particularly in view of the 30-second minimum charge imposed on each individual call, the tariffed MEGACOM service would not fall within the statutory definition of Section 4252(b)(2) for taxable service. *See, e.g., Reeve Brothers, Inc. v. United States*, No. 03 Civ. 745, 2004 WL 2901579, at *14 (W.D.Pa. Nov.30, 2004).

The Government contends that, as a practical matter, it is impossible not to round the duration of each call, and that per second increments are reasonable increments in which to round. (*See* Torrance Letter at 2-3.) The Government argues that this inevitable rounding does not convert a per-hour billing system into a per-call billing system. However, the rounded duration of the calls is irrelevant to the key issue: whether the services provided are charged per call, or billed as a periodic charge based on either a flat rate or the total elapsed transmission time.

The Government also argues that AT & T may have had a variety of reasons for imposing the minimum time requirement on each call, including business justifications to offset the costs of its services. (*See* Torrance Letter at 3.) But the business justification for the 30-second minimum charge for each call is irrelevant. The minimum charge for each call assures that the billing will in fact vary with the number of calls rather than simply the total actual elapsed time of the calls. Fortis is charged for each tariffed MEGACOM call, regardless of how many seconds that call is ultimately rounded to represent. Thus, Fortis's tariffed MEGACOM service does not fall within the reach of Section 4252(b)(2).

C.

The AT & T Business Service Guide governs detariffed MEGACOM service. (*See* AT & T Business Service Guide for Toll-Free Services ("AT & T Business Service Guide"), attached as Ex. C to Declaration of Stephen J. Rosen dated December 18, 2003.) The AT & T Business Service Guide states that, "[t]he minimum time requirement for AT & T Toll-Free MEGACOM Service and AT & T Toll-Free READYLINE Service is 30 seconds with additional increments on a per second basis and applies per service area per completed call and by time-of-day rate period per routing arrangement.") According to the Government, the AT & T Business Service Guide sets forth the same one-second billing increments and 30-second minimum call requirements as the F.C.C. Tariff governing tariffed MEGACOM service. The Government notes that the AT & T Business Service Guide is silent with respect to whether

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the detariffed MEGACOM service usage is charged per hour or per call. (*See id.*; Torrance Letter at 3-4.)

*4 However, as evidenced by invoices from AT & T, detariffed MEGACOM service is also billed by the individual call. Fortis has submitted a sample bill page showing the per second rate for detariffed MEGACOM service. (*See* Invoice for Detariffed MEGACOM Service, October 2001, attached to Levine Letter as Ex. F.) The hourly rate established by Contract Tariff No. 15241 ($X.XX), divided by 3600, yields a per second rate of $0.XXXXXXX. The per call charge is then calculated by multiplying each call's duration (in seconds) by this per second rate. (*See* Levine Letter at 4 n. 5.) After rounding up the duration of each individual call, then multiplying by the per second rate, a per call charge for the detariffed MEGACOM service is calculated. (*See* Invoice for Detariffed MEGACOM Service, October 2001, attached to Levine Letter as Ex. F.) Like the per call charges for tariffed MEGACOM service, the per call charges are then added together each month to produce the total monthly invoice for detariffed MEGACOM service. (*See* Levine Letter at 4-5.) Thus, detariffed MEGACOM service is not taxable because it is not billed according to a "periodic charge" within Section 4252(b)(2).

D.

Detariffed READYLINE service is also billed at per call rates. The AT & T Business Service Guide governs detariffed READYLINE service, like detariffed MEGACOM service. (*See* AT & T Business Service Guide.) The AT & T Business Service Guide imposes the same 30-second initial rate increment and additional period rate charges on detariffed READYLINE service that are imposed on detariffed MEGACOM service. (*Id.*) Moreover, the sample bill pages submitted by Fortis also establish that in October 2001, the plaintiff was charged $0.XXXXXXX per second of detariffed READYLINE service usage. (*See* Invoice for Detariffed READYLINE Service, October 2001, attached as Ex. E to Levine Letter.) This per second rate was established by dividing the hourly rate set forth in Contract Tariff No. 15241 ($X.XX) by 3600. (*See* Levine Letter at 4 n. 5.) The per call charges for all detariffed READYLINE service are added together to determine the total monthly bill for detariffed READYLINE service. (*Id.* at 4-5.) The plaintiff's bill will vary based on the duration of each call and the number of calls, and is not determined by the total elapsed transmission time. Accordingly, the detariffed READYLINE calls are billed per call and are therefore not within the statutory definition of taxable toll telephone service provided in Section 4252(b)(2).

CONCLUSION

For the reasons stated above, MEGACOM and READYLINE services do not fall within the definition of taxable toll telephone service covered by 26 U.S.C. § 4252(b)(2). Fortis's motion for summary judgment in its favor on the liability of the Government on Fortis's claim to a refund for taxes remitted on these inbound 800 services is granted. The defendant's cross-motion for summary judgment dismissing the complaint with respect to these services is denied. The parties should submit a proposed judgment within thirty days.

*5 SO ORDERED.

S.D.N.Y.,2005.
Fortis, Inc. v. U.S.
Slip Copy, 2005 WL 356827 (S.D.N.Y.), 95 A.F.T.R.2d 2005-1121

Briefs and Other Related Documents (Back to top)

• 1:03cv05137 (Docket) (Jul. 11, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.